## LIVERPOOL & LONDON & GLOBE INSURANCE COMPANY *v.* BOARD OF ASSESSORS FOR THE PARISH OF ORLEANS.

### ERROR TO THE SUPREME COURT OF THE STATE OF LOUISIANA.

No. 92.    Argued April 18, 19, 1911.—Decided May 15, 1911.

Credits on open account are incorporeal and have no actual situs, but they constitute property and as such are taxable by the power having jurisdiction.

The maxim of *mobilia sequuntur personam* yields to the fact of actual control; and jurisdiction to tax intangible credits exists in the sovereignty of the debtor's domicile, such credits being of value to the creditor because of the power given by such sovereignty to enforce the debt. *Blackstone* v. *Miller,* 188 U. S. 205. Such taxation does not deny due process of law.

The jurisdiction of the State of the domicile over the creditor's person does not exclude the power of another State in which he transacts his business to tax credits there accruing to him from resident debtors, and thus, without denying due process of law, to enforce contribution to support the government under whose protection his affairs are conducted.

Credits need not be evidenced in any particular manner in order to render them subject to taxation.

Premiums due by residents to a non-resident insurance company and which have been extended, but for which no written obligations have been given, are credits subject to taxation by the State where the debtor is domiciled; and so *held* that the statute of Louisiana to that effect is not unconstitutional as denying due process of law.

In a suit for cancellation of an entire assessment as unconstitutional the plaintiff cannot ask for a reduction of amount if there is a proceeding under the state statute for that purpose and which he has not availed of.

122 Louisiana, 98, affirmed.

THE facts, which involve the power of a State to tax premiums of insurance due by residents to a non-resident insurance company which have been extended but not evidenced by written instrument, and the constitutionality of a statute of Louisiana to that effect, are stated in the opinion.

*Mr. Monte M. Lemann* and *Mr. Alexander C. King,* with whom *Mr. Harry H. Hall* and *Mr. J. Blanc Monroe* were on the brief, for plaintiffs in error:

A State cannot legally impose an assessment and tax upon premiums due under open account by local policy holders to non-resident or foreign insurance companies. Such assessment and tax would be a taking of property without due process of law, in violation of the Fourteenth Amendment. *St. Louis* v. *Ferry Co.,* 11 Wall. 429; *Louisville &c.* v. *Kentucky,* 188 U. S. 385, 398; *State Tax on Foreign-Held Bonds,* 15 Wall. 300; *Kirtland* v. *Hotchkiss,* 100 U. S. 491; *United States* v. *Erie,* 106 U. S. 327; *Hagan* v. *Reclamation,* 111 U. S. 701; *Pullman Palace Car Co.* v. *Pennsylvania,* 141 U. S. 18; *Erie R. R.* v. *Pennsylvania,* 153 U. S. 628; *Savings Society* v. *Multnomah,* 169 U. S. 421; *Dewey* v. *Des Moines,* 173 U. S. 193; *New Orleans* v. *Stempel,* 175 U. S. 309; *Bristol* v. *Washington County,* 177 U. S. 133; *Blackstone* v. *Miller,* 188 U. S. 189; *Board of Assessors* v. *Comptoir National,* 191 U. S. 388; *Metropoli-*

*tan Life* v. *New Orleans*, 205 U. S. 395; *Buck* v. *Beach*, 206 U. S. 407; *Barber Asphalt Co.* v. *City*, 41 La. Ann. 1015; *L. & L. & G. Insurance Co.* v. *Assessors*, 44 La. Ann. 760; *Railey* v. *Assessors*, 44 La. Ann. 766; *Clason* v. *City*, 46 La. Ann. 1; *State* v. *Assessors*, 47 La. Ann. 1545; *Bluefields Banana Co.* v. *Assessors*, 49 La. Ann. 43; *Parker* v. *Strouse*, 49 La. Ann. 1173; *L. & L. & G. Insurance Co.* v. *Assessors*, 51 La. Ann. 1028; *Comptoir National* v. *Assessors*, 52 La. Ann. 1319; *Williams* v. *Triche*, 107 Louisiana, 92; *Monongahela* v. *Assessors*, 115 Louisiana, 566; *Metropolitan Life* v. *Assessors*, 115 Louisiana, 698.

A plain distinction can be drawn between a premium due on open account to a non-resident, or foreign, insurance corporation, by a local policy holder, on the one hand, and on the other, an open account resulting from the sale of merchandise to a local purchaser from a local stock of goods belonging to a non-resident owner. *General Electric Co.* v. *Assessors*, 121 Louisiana, 116.

Assessments admittedly the result of mere guesswork, and so excessive as to exceed from ten to one hundred times the admitted value of the thing assessed, are absolute nullities. 27 Am. & Eng. Ency. of Law, 660; 26 La. Ann. 694; 30 La. Ann. 261; 40 La. Ann. 371; 42 La. Ann. 374; 130 U. S. 177; Cooley on Taxation, 2d ed., 2; *Merchants' Insurance Co.* v. *Assessors*, 40 La. Ann. 372; *Natalbany Lumber Co.* v. *Assessors*, 123 Louisiana, 174; *Union Oil Co.* v. *Campbell*, 48 La. Ann. 1350; *Waggoner* v. *Maumus*, 112 Louisiana, 232; *Swift* v. *Assessors*, 115 Louisiana, 321.

The denial by the assessors of the statutory right of the owners to be heard, renders the assessment null, and would amount to a taking of petitioner's property without due process of law. Louisiana Acts, 1898, p. 360; 1906, p. 96; Cooley on Taxation, 2d ed., 361; 27 Am. & Eng. Ency. of Law, 660, 704; 21 Fed. Rep. 99; 111 U. S. 708; 49 La. Ann. 1350; *Johnson* v. *Tax Collector*, 39 La. Ann. 538;

*Shattuck* v. *New Orleans,* 39 La. Ann. 209; 2 Cooley on Taxation, 2d ed., 362, 363.

Assessors have no right arbitrarily to refuse to believe the evidence of the taxpayers. 1 Desty on Taxation, 543.

The statutory limitation does not apply to suits contesting the validity of the tax, *Oteri* v. *Parker,* 42 La. Ann. 374; *Railroad Co.* v. *Sheriff,* 50 La. Ann. 737; the decision that the failure to file these suits prior to the first of November, 1905–1907, barred averring the nullity or excessive character of the assessments amounts to a deprivation of plaintiff's property, without judicial action and without due process of law. *Central of Georgia* v. *Wright,* 207 U. S. 138; *Travelers'* v. *Assessors,* 122 Louisiana, 129, 136.

*Mr. George H. Terriberry, Mr. H. Garland Dupré* and *Mr. Harry P. Sneed* for defendants in error.

MR. JUSTICE HUGHES delivered the opinion of the court.

This suit was brought by the Liverpool & London & Globe Insurance Company of New York, a foreign corporation doing business in the State of Louisiana, to cancel an assessment made by the Board of Assessors for the Parish of Orleans for the year 1906.

The assessment itself is not shown by the record, but from the testimony the Supreme Court of the State concluded "that the property intended to be assessed was the amount due plaintiff by its policy holders in this State for premiums on which credit of thirty and sixty days had been extended." Dealing with the case from this standpoint, that court affirmed a judgment dismissing the suit, giving as its reasons "that the said credits are due in this State and have arisen in the course of the business of the plaintiff company done in this State, and are therefore part and parcel of the said business in this State, and as a consequence are taxable here." 122 Louisiana, 98.

The Insurance Company brings this writ of error, insisting that the premium accounts did not constitute property taxable in Louisiana and that in consequence the assessment violated the Fourteenth Amendment to the Constitution of the United States in depriving the Company of its property without due process of law.

The assessment was laid under Act 170 of 1898. Section 1 of this act in defining property subject to taxation includes "all rights, credits, bonds, and securities of all kinds; promissory notes, open accounts, and other obligations . . . . and all movable and immovable, corporeal and incorporeal articles or things of value, owned and held and controlled within the State of Louisiana by any person in any capacity whatsoever." Section 7 makes it the duty of the tax assessors to place upon the assessment list all property subject to taxation, and provides as follows:

"Provided further, that in assessing mercantile firms the true intent and purpose of this act shall be held to mean, the placing of such value upon the stock in trade, all cash, whether borrowed or not, money at interest, open accounts, credits, etc., as will represent in their aggregate a fair average of the capital, both cash and credit, employed in the business of the party or parties to be assessed. And this shall apply with equal force to any person or persons representing in this State business interests that may claim a domicile elsewhere, the intent and purpose being that no non-resident, either by himself or through any agent shall transact business here without paying to the State a corresponding tax with that exacted of its own citizens; and all bills receivable, obligations or credits arising from the business done in this State are hereby declared assessable within this State, and at the business domicile of said non-resident, his agent or representative."

In construing this statute, the Supreme Court of Loui-

siana in *Metropolitan Life Insurance Company* v. *Board of Assessors,* 115 Louisiana, 708, said: "There can be no doubt that the seventh section of the act of 1898, . . . announced the policy of the State touching the taxation of credits and bills of exchange representing an amount of the property of non-residents equivalent or corresponding to said bills or credits which was utilized by them in the prosecution of their business in the State of Louisiana. The evident object of the statute was to do away with the discrimination theretofore existing in favor of non-residents as against residents, and place them on an equal footing." Again, in *General Electric Company* v. *Board of Assessors,* 121 Louisiana, 116, where open accounts arising on the sale of merchandise were the subject of the assessment, the court said: "There can be no serious question but that the legislature has provided that credits due upon open accounts arising out of business done in this State by non-residents, shall be taxed; . . . The State imposes this tax because of her need of the revenue to be derived from it; she extends to the business the protection of her laws, and seeks to make the business bear its just proportion of the burden of taxation. The situation would be, we repeat, unfortunate,—not to say deplorable—if the State were left no choice between having to forego this needed revenue, or else handicapping with this tax the business of her own citizens and home corporations in their competition with foreigners for the business to be done here." And this decision was followed in the present case.

This court has had repeated occasion to consider the validity of taxes imposed under the Louisiana act. The case of *New Orleans* v. *Stempel,* 175 U. S. 309, arose under Chapter 106 of the statutes of 1890, but the pertinent features of the act were the same. There it appeared that the assessed credits were evidenced by notes secured by mortgages on real estate in New Orleans; that these

notes and mortgages were in that city, in the possession of an agent, who collected the proceeds and the interest as it became due and deposited the same in a bank in New Orleans to the credit of the plaintiff, the guardian of infant owners who like herself were domiciled in the State of New York. The tax was sustained. In *Board of Assessors* v. *Comptoir National*, 191 U. S. 388, the question arose under the statute of 1898. In that case, a foreign banking company did business in New Orleans and there made loans through a local agent. The loans were made upon collateral security, the customer drawing his check which was treated as an overdraft and held as a memorandum of the indebtedness. The court decided that the credits so evidenced, created in the Louisiana business, were taxable in that State. In *Metropolitan Life Insurance Company* v. *New Orleans*, 205 U. S. 395—also arising under the act of 1898—the validity of a similar tax was upheld. That case was one of loans made through the local agent of the Insurance Company, a New York corporation doing business in Louisiana, to its policy holders upon the security of their policies. The course of business was that on the approval of a loan at the home office of the Company, the Company forwarded to the agent a check for the amount, with a note to be signed by the borrower. The agent procured the note to be signed and forwarded both note and policy to the home office. The agent collected and transmitted the interest, and when the notes were paid it was to the agent to whom they were sent to be delivered back to the makers. At all other times the notes and the policies securing them were kept at the home office in New York. In *Orleans Parish* v. *New York Life Insurance Company*, 216 U. S. 517, the so-called credit consisted, in fact, of a payment to the policy holder of a portion of the amount for which the Company was bound by its policy. It was found that despite the fact that notes were given there was no per-

sonal liability, but simply a deduction in account. As there was no loan, there was no credit to be taxed; and a decree in the Circuit Court restraining the collection of the tax was affirmed.

Here an indebtedness actually existed. This is assumed in the objections to the assessment. The indebtedness had its origin in the course of business transacted by the foreign corporation in Louisiana under the laws of that State. If the Louisiana policy holders had given notes for the premiums, which were to be collected through the local agents, there could be no question as to the validity of the tax. The difference between notes given for loans on policies, and notes given for premiums, could not be regarded as a material one so far as the taxing power of the State is concerned. In both cases, the obligations to pay would represent returns to the corporation upon business conducted within the State; in the one, for the moneys loaned with compensation for their use; in the other, for the contracts of insurance. Nor would the power to tax depend on the presence of the notes within the State. *Metropolitan Life Insurance Company* v. *New Orleans, supra; Bristol* v. *Washington County*, 177 U. S. 133. The notes, in these cases, had been removed to the creditor's home; and, despite this removal, they were attributed to the place of origin. Further, if there had been no notes but the premium accounts had been otherwise evidenced by written instruments, they would have been equally taxable. The "checks" in *Board of Assessors* v. *Comptoir National, supra,* were only memoranda of indebtedness or vouchers. "While called 'checks,' and so referred to in the record and by the parties in their dealings, the instrument delivered to the Comptoir, in form an ordinary check as though drawn for payment on presentation from moneys deposited, had no such function. The money was paid to the customer upon the security of the collateral, and the so-called check taken and held as a memo-

randum of the indebtedness to the Comptoir" (pp. 400, 401).

But it is said that the State of Louisiana had no power to tax the credits here in question because they were not evidenced by written instruments. The contention is thus stated in the petition of the Insurance Company in the state court. "Premiums due on open account to a foreign corporation cannot be taxed. The legislature has not the power to localize an abstract credit away from the domicile of the creditor, the State's power of taxation being limited to persons, property or business within its jurisdiction. The levying of a tax upon incorporeal things, such as abstract credits, not in so-called 'concrete' form and without tangible shape violates the Fourteenth Amendment of the United States Constitution."

The asserted distinction cannot be maintained. When it is said that intangible property, such as credits on open account, have their situs at the creditor's domicile, the metaphor does not aid. Being incorporeal, they can have no actual situs. But they constitute property; as such they must be regarded as taxable, and the question is one of jurisdiction.

The legal fiction, expressed in the maxim *mobilia sequuntur personam*, yields to the fact of actual control elsewhere. And in the case of credits, though intangible, arising as did those in the present instance, the control adequate to confer jurisdiction may be found in the sovereignty of the debtor's domicile. The debt, of course, is not property in the hands of the debtor; but it is an obligation of the debtor and is of value to the creditor because he may be compelled to pay; and power over the debtor at his domicile is control of the ordinary means of enforcement. *Blackstone* v. *Miller*, 188 U. S. 205, 206. Tested by the criteria afforded by the authorities we have cited, Louisiana must be deemed to have had jurisdiction to impose the tax. The credits would have had no exist-

ence save for the permission of Louisiana; they issued from the business transacted under her sanction within her borders; the sums were payable by persons domiciled within the State, and there the rights of the creditor were to be enforced. If locality, in the sense of subjection to sovereign power, could be attributed to these credits, they could be localized there. If, as property, they could be deemed to be taxable at all, they could be taxed there.

The decision in *State Tax On Foreign-held Bonds*, 15 Wall. 300, is not in point. There the tax was on the interest on bonds made and payable out of the State, and issued to and held by non-residents of the State. See *Savings Society* v. *Multnomah County*, 169 U. S. 428; *New Orleans* v. *Stempel, supra*, 319, 320; *Blackstone* v. *Miller, supra,* p. 206. Nor was the question determined in *Murray* v. *Charleston*, 96 U. S. 432, where a city attempted to tax its corporate stock, or public debt, owned by non-residents, and the court limited its opinion to the holding "that no municipality of a State can, by its own ordinances, under the guise of taxation, relieve itself from performing to the letter all that it has expressly promised to its creditors" (p. 448).

In *Kirtland* v. *Hotchkiss*, 100 U. S. 491, it was held that the Federal Constitution does not prohibit a State from taxing her own citizens upon bonds belonging to them, although they were made by debtors resident in other States and secured by mortgage on real estate there situated. The sole inquiry was with respect to the validity of the statute of Connecticut where the creditor was domiciled. As the court said in *New Orleans* v. *Stempel, supra* (p. 321), in referring to the *Kirtland Case*, "It was assumed that the situs of such intangible property as a debt evidenced by bond was at the domicile of the owner. There was no legislation attempting to set aside that ordinary rule in respect to the matter of situs. On the contrary, the legislature of the State of Connecticut,

from which the case came, plainly reaffirmed the rule, and the court in its opinion summed up the case in these words (p. 499): 'Whether the State of Connecticut shall measure the contribution which persons resident within its jurisdiction shall make by way of taxes, in return for the protection it affords them, by the value of the credits, choses in action, bonds or stocks which they may own (other than such as are exempted or protected from taxation under the Constitution and laws of the United States) is a matter which concerns only the people of that State, with which the Federal Government cannot rightfully interfere.' " See also *Kidd* v. *Alabama,* 188 U. S. 730.

But, as we have seen, the jurisdiction of the State or his domicile, over the creditor's person, does not exclude the power of another State in which he transacts his business, to lay a tax upon the credits there accruing to him against resident debtors and thus to enforce contribution for the support of the government under whose protection his affairs are conducted. And that the jurisdiction of the latter State rests upon considerations which are more fundamental than that notes have been given, or that the credits are evidenced in any particular manner, was clearly brought out in the concluding statement of the opinion in the case of the *Metropolitan Life Insurance Company, supra.* There the court said: "Moreover, neither the fiction that personal property follows the domicile of its owner, nor the doctrine that credits evidenced by bonds or notes may have the situs of the latter, can be allowed to obscure the truth. *Blackstone* v. *Miller,* 188 U. S. 189. We are not dealing here merely with a single credit or a series of separate credits, but with a business. The insurance company chose to enter into the business of lending money within the State of Louisiana, and employed a local agent to conduct that business. It was conducted under the laws of the State. The State undertook to tax the capital employed in the business

precisely as it taxed the capital of its own citizens in like situation. For the purpose of arriving at the amount of capital actually employed, it caused the credits arising out of the business to be assessed. We think the State had the power to do this, and that the foreigner doing business cannot escape taxation upon his capital by removing temporarily from the State evidences of credits in the form of notes. Under such circumstances, they have a taxable situs in the State of their origin." Equally, then, had the State the power to tax the premium accounts here involved. They were not withdrawn from its constitutional authority, either by reason of the fact that they were payable in consideration of insurance, instead of loans or goods sold, or by the circumstance that the credits were not evidenced by written instruments. They were none the less enforceable credits arising in the local business.

It is also urged that the assessment was excessive. This question was not suitably presented in the state court, for the suit was brought for the cancellation of the entire assessment upon the ground that, as a whole, it was without warrant of law, or if within the statute was beyond the power of the legislature to authorize. It is said that so far as the assessment was in excess of the actual credits it was a nullity, as one of property not in existence. The subject of the assessment, however, was a class of credits which was within the taxing power and the question is one of amount. Proper opportunity was afforded for its correction if it was too great; and if the plaintiff in error had seasonably sought a reduction, availing itself of the remedy that was open to it under the state law, it could have obtained appropriate relief. *Orient Insurance Company* v. *Board of Assessors*, 124 Louisiana, 872. In no aspect of the case, can it be said that there was want of due process of law.

The judgment is

*Affirmed.*