SHAFFER v. HOWARD, State Auditor, et al.

(District Court, E. D. Oklahoma. February 4, 1918.)

No. 2444.

1. TAXATION ⊂⊃608(9)—COLLECTION OF TAX—INJUNCTION—ADEQUATE REMEDY AT LAW.

A suit to enjoin the collection of income taxes levied against a nonresident under Oklahoma Income Tax (Laws 1915, c. 164), cannot be dismissed on the ground that section 9 made applicable provisions of Laws 1915, c. 107, relating to ad valorem taxes, and thus furnished a complete and adequate remedy at law, the provisions of chapter 107 in any event giving no relief against the liens created by the income tax statute.

2. TAXATION ⚖⇒54—STATE INCOME TAXES—VALIDITY.

   In view of the several federal income tax acts, Okl. Laws 1915, c. 164, § 1, declaring that each and every person in the state shall be liable to an annual tax on the entire net income of such person arising and accruing from all sources, and that a like tax shall be levied, assessed, and collected and paid upon the entire net income from all property owned, and of every business, trade, or profession carried on in the state by persons residing elsewhere, is not invalid as to a nonresident who received an income from Oklahoma oil wells operated under a lease, on the ground that the income is made up from two inseparable elements, the property and the owner's management or intelligence.

   Campbell, District Judge, dissenting in part.

In Equity. Suit by Charles B. Shaffer against E. B. Howard, State Auditor, and John B. Woofter, Sheriff. Motion for temporary injunction denied.

Ramsey, De Meules, Rosser, Martin & King, of Tulsa, Okl., for plaintiff.

S. P. Freeling, Atty. Gen., for defendants.

STONE, Circuit Judge. This case is an injunction brought by a nonresident of the state of Oklahoma, seeking to enjoin as invalid the enforcement of the state income law taxing that portion of the income of nonresidents which is derived from sources within the state. The instant decision arises upon an application for a preliminary injunction.

That state statute (Session Laws 1915, p. 282) provides in section 1 that:

"Each and every person in this state shall be liable to an annual tax upon the entire net income of such person arising or accruing from all sources during the preceding calender year, and a like tax shall be levied, assessed, collected, and paid annually upon the entire net income from all property owned, and of every business, trade or profession carried on in this state by persons residing elsewhere."

The tax here involved was imposed under authority of the latter part of this section upon the income derived by the plaintiff from the production of certain oil wells operated under an oil lease. The plaintiff lives in Chicago, Ill., from which place he directs this business.

[1] At the threshold of the case is the claim of want of equity because of an adequate legal remedy. This point is not well taken. Also the petition raised a point that the later gross production tax law of the state had displaced the income tax law in so far as incomes from oil properties. This point was not pressed at the hearing, and, presuming it abandoned, we pass it by.

[2] This leaves the question of the validity of the law. This is based on the claims that an income tax is a kind of taxation differing in its basic principles from all other taxation; and, as such, being a tax levied against the person who receives the income, is invalid because he is a nonresident; or, if levied against the income, is still void because the income is made up from two inseparable elements—the property and the owner's management or intelligence—and the latter of these is outside the state.

It is claimed that income taxation is a generic kind of taxation, different from all other taxation, and resting upon an entirely different basis. That income taxation is a separate and distinct *form* of exercising the sovereign power of taxation is evident. That the right to its employment rests upon a basis different from that of other modes of raising revenue does not follow. Laying aside political considerations, such as gave rise to the War of the Revolution, there is but one theory of right to tax underlying all taxation—that of protection or benefit rendered by the state to persons, property, or business. Union Refrigerator Transit Co. v. Kentucky, 199 U. S. 194, 202, 26 Sup. Ct. 36, 50 L. Ed. 150, 4 Ann. Cas. 493; Cleveland, P. & A. R. Co. v. Pennsylvania, 15 Wall. 300, 319, 21 L. Ed. 179. Within constitutional limits, the choice of any particular form of taxation is a practical legislative problem. Certain classes of taxation have adherents who urge certain consideration, based upon their ideas of just and practical results in taxation. One such class is income taxes, and its sponsors urge its employment on the theory that it places the burden of government upon those most able to bear it. This may be a reason why the Legislature should choose income taxation as a revenue-raising method. It forms no new basis for a right of taxation itself. It refers solely to a choice of methods, all of which rest upon a common basis. The right to tax an income rests upon the protection or benefit given that income by the state.

The next contentions of plaintiff are related in thought, and will be considered together. They are based upon the idea that the entire income, or at least a material, inseparable, component part thereof (the directing or managing intelligence), is without the jurisdiction of the state of Oklahoma. The income here involved arose solely from production of oil wells and appliances within the state of Oklahoma, managed by plaintiff from his city of residence, Chicago, Ill. Unless the state has given protection or benefit to this income, it has no reason or right to ask contribution therefrom. McCulloch v. Maryland, 4 Wheat. 316, 429, 4 L. Ed. 579; Cleveland, P. & A. R. Co. v. Pennsylvania, 15 Wall. 300, 319, 21 L. Ed. 179; Union Refrigerator Transit Co. v. Kentucky, 199 U. S. 194, 202, 26 Sup. Ct. 36, 50 L. Ed. 150, 4 Ann. Cas. 493.

Plaintiff says no such protection has here been given because the levy is "a tax on this plaintiff because of his income." In one sense all taxes might be said to be a tax on the taxpayer because of his land or of his personalty or of his business or of some privilege. But what the plaintiff means, as he says further in his brief, is that "the tax is directed against the individual and not against the property." By way of further elucidation, he quotes with approval from State ex rel. Sallie F. Moon Co. v. Wisconsin Tax Commission (Wis.) 163 N. W. 639, a portion of which is that:

"It is the recipient of the income [tax] that is taxed, not his property. * * * The tax is upon the right or ability to produce, create, receive, and enjoy, and not upon specific property."

It does not necessarily follow from this definition that the plaintiff is subject to income tax only in the state of his residence. It means,

rather, that he is subject to income taxation only in those jurisdictions which protect him in the production, creation, receipt, and enjoyment of his income. If he lives in Illinois, and has in Oklahoma the property or the business from which his income flows, does not the latter state truly protect him in the privilege of producing, creating, receiving, and enjoying that income when it permits and protects his business from which the income flows? How is that affected by his residence? Both the property in Oklahoma and the intelligence in Illinois contributed to this income. Each was necessary to the result. Each had protection from the state in which it was. It is impossible to separate the two elements for taxation purposes. It is impossible, if material, to determine which was most potent in the result. Can either state be told it cannot be compensated for its protection of a necessary component element of this income, or that it cannot measure such compensation by that income? If, through accident or design, an individual dwells in one state, while his business is in part or wholly located in other states, so that he needs, commands, and receives the protection of several states, can his income therefrom escape imposition? It may be true that the state which protects the person of the one who creates, receives, or enjoys an income may require of him therefor a tax measured by his ability to pay from his entire income. That is no reason why the state which protects the business which contributes to his income may not also demand, as pay for that protection, a tax measured by that part of his income which came from that business. If in the one case the state of residence can tax the right to create, receive, and enjoy an income, why cannot another state tax his right to create and receive an income from business within its borders?

A tax upon an income of the instant character (from a business) is directed at neither the person who receives nor the property from which the income arises, but at the privilege of making, producing, creating, receiving, and enjoying the income itself. The right to lay such tax depends upon the protection of the person who receives or of the business which helps create that income.

There is nothing new in this conception of a nonresident being taxed for rights or privileges he exercises under the protection of another state. Inheritance taxes are illustrations. Mager v. Grima, 8 How. 490, 12 L. Ed. 1168; Scholey v. Rew, 23 Wall. 331, 23 L. Ed. 99. Such a tax is levied against the nonresident as well as the resident because of his inheritance—the state protects him in that privilege. Occupation or business taxes are also illustrative. And this would be so because the state of Oklahoma permits him to carry on his business within the state, and protects him therein, irrespective of whether he lives within or without the state, or manages the business from within or without the state. When he can be properly taxed for the privilege of inheriting the property or carrying on a business within another state, why cannot he be taxed upon an income he derives from business within the state, when a tax upon such an income as this is a levy on the privilege of producing, creating, receiving, and enjoying an income? It is true the tax on the income is not upon the busi-

ness conducted, but it is also true that the income springs therefrom, and, following the situs thereof, as the child takes legally the residence of the parent, it carries the right of taxation with it.

Such an income of a nonresident is taxable not only because it fits in with the theory of the right of all taxation, i. e., protection, but for another reason. The situs of things and choses in action and legal rights rests in many cases upon a legal fiction. The necessity of avoiding confusion, inconvenience, or injustice arises in some instance, and the law settles upon a so-called situs. Familiar illustrations are: A married woman ordinarily partakes of her husband's nationality and domicile; the law of the domicile controls the descent of personalty; and many others to be found in the realm of private international law. These questions arise where there are conflicting claims of jurisdiction. Their settlement depends often, if not usually, upon broad considerations of public policy and justice. One main test in determining the public policy and justice of a situation is to examine the possible or probable effect of a particular holding. If the above view of this tax taken by the court does not prevail, there will result the possibility of avoidance of state income taxes. This latter through the possibility of taking up residence in a state with little or no taxation of that sort. Income taxation is too valuable and important a method of exercising the sovereign power of taxation to risk any diminution through a choice of residence at the hands of the party taxed who at the same time maintains his property and business as before. The public good requires its preservation in its entirety. As said by Mr. Justice Field (Delaware Railroad Tax, 18 Wall. 206, 226, 21 L. Ed. 888):

"The power of taxation is an attribute of sovereignty, and is essential to every independent government. As this court has said, the whole community is interested in retaining it undiminished. *  *  * "

In addition to the above theory of taxation and public policy considerations there is another thought which, while not controlling, has a persuasive force. That is the history of our national income laws. Our first income tax law sprang from the early exigencies of the Civil War. The act of August 5, 1861, c. 45, § 49 (12 St. 292, 309), taxed incomes of residents and those derived from property in United States belonging to citizens of United States residing abroad. That of July 1, 1862, c. 119, § 84 (12 St. 432) provides for tax on gross receipts for insurance premiums, "and like duty shall be paid by the agent of any foreign insurance company having an office or doing business in the United States." The act of June 30, 1864 (13 St. 223, c. 173, §§ 105, 116), followed the two preceding laws. The act of July 4, 1864 (13 St. 417), continued the tax as to residents and nonresident citizens. The act of July 13, 1866 (14 St. 98, c. 184, § 9), amended section 116, supra, "and a like tax shall be levied, collected, and paid annually upon the gains, profits, and income of every business, trade, or profession carried on in the United States by persons residing without the United States, and not citizens thereof." This act also amended section 122 of the June 30, 1864, act, which taxed bond coupons, interest, and dividends of railroads, canals, turnpike, etc., companies by inserting as to

bond or stockholders the words "including nonresidents whether citizens or aliens." The act of March 2, 1867 (14 St. 471, 477, c. 169, § 13), followed section 166, supra, as amended "and a like tax shall be levied, collected, and paid annually upon the gains, profits, and income of every business, trade, or profession carried on in the United States, by persons residing without the United States, and not citizens thereof." The act of July 14, 1870 (16 St. 256, 257, c. 255, § 6), covered incomes of residents, nonresident citizens, "any business, trade, or profession carried on in the United States by any person residing without the United States and not a citizen thereof," and "rents of real estate within the United States owned by any person residing without the United States, and not a citizen thereof." Section 15 of this act provided for a tax on coupons, interest, and dividends "to whatsoever person the same may be due, including nonresidents, whether citizens or aliens." There followed an hiatus in this sort of taxation until the act of August 27, 1894 (28 St. 509, c. 349), which provided (section 27) for a tax on incomes of citizens, whether resident or nonresident, and on "all property owned and of every business, trade, or profession carried on in the United States by persons residing without the United States." Section 31 provides that "any nonresident" may have benefit of certain exemptions by filing tax statement, and "in computing income he shall include all income from every source, but unless he be a citizen of the United States he shall only pay on that part of the income which is derived from any source in the United States." Nonresident corporations were under same liability as resident. The act of August 5, 1909 (36 St. 112, c. 6, § 38) covers income of corporations, "or, if organized under the laws of any foreign country, upon the amount of net income over and above five thousand dollars received by it from business transacted and capital invested within the United States and its territories." The act of October 3, 1913 (Act Oct. 13, 1913, c. 16, 38 Stat. 114), taxed incomes of citizens (resident or nonresident), of residents, and from property, business, etc., in United States of nonresidents (not citizens). The act of September 8, 1916 (39 St. pt. I, p. 756, c. 463, § 1, subd. a [Comp. St. 1916, § 6336a]), imposes such tax on the income of citizens and of residents of the United States and upon income received "from all sources within the United States by every individual a nonresident alien." The act of October 3, 1917 (40 Stat. 300, c. 63), continues the tax of the act of 1916, increasing it as to some classes, and by section 200, defining the terms used in connection with war excess profits tax, provides that "the term 'net income' means, in the case of a foreign corporation or partnership or a nonresident alien individual, the net income received from sources within the United States." While some of the above references go outside of income taxes, such exceptions are illustrations in kindred fields. And all show an unbroken legislative policy (beginning with the act of July 13, 1866, and extending through the act of 1917) to tax the incomes of nonresident aliens in so far as derived from sources within the United States. There has been but one judicial challenge of this asserted right. In Railroad Co. v. Jackson, 7 Wall. 262, 19 L. Ed. 88, although the validity of the income tax law of June 30, 1864, was questioned, in so far

as reduction of interest was concerned, by a nonresident alien railroad bondholder, the court held that the act under consideration did not include such a person within its terms, saying:

"It is not important, however, to pursue the argument, as Congress has since, in express terms by the acts of March 10 and July 13, 1866, imposed a tax on alien nonresident bondholders. The question hereafter will be, not whether the laws embrace the alien nonresident holder, but whether it is competent for Congress to impose it, upon which we express no opinion."

Mr. Justice Clifford (Mr. Justice Swayne concurring) dissented, saying:

"I dissent from the opinion and judgment of the court in this case, because I think the taxes in question, both state and federal, were legally assessed, and that the officers of the railway company properly deducted the same from the amount of the coupons described in the declaration."

So that, as far as there has been any expression upon the validity of such provisions, they have been approved. There is no reason why the situs of an income is any different when the tax is national instead of state. The relative positions of the nonresident alien and the state nonresident are, in this respect, identical. If the income is, for taxation purposes, only where the recipient resides, then the United States can no more tax the income of a nonresident alien than a state can that of a nonresident. There is common to both the same reason that no sovereignty can properly tax something not within its jurisdiction in the sense of not being under its protection. As said by Chief Justice Marshall in McCulloch v. Maryland, 4 Wheat. 316, 429, 4 L. Ed. 579, in speaking of the state power of taxation:

"It may be exercised upon every object brought within its jurisdiction. This is true. But to what source do we trace this right? It is obvious that it is an incident of sovereignty, and is coextensive with that to which it is an incident. All subjects over which the sovereign power of a state extends are objects of taxation; but those over which it does not extend are, upon the soundest principles, exempt from taxation. This proposition may almost be pronounced self-evident."

It is inconceivable that the national government would, under the guise of taxation, practice what, without such situs and power, would, in the language of Justice Brown, amount to extortion. Union Transit Co. v. Kentucky, 199 U. S. 194, 202, 26 Sup. Ct. 36, 50 L. Ed. 150, 4 Ann. Cas. 493. This history of the long assertion and acceptation of the power in a government to tax an income produced in or arising from sources within its jurisdiction, though such income belong to one foreign in citizenship and residence, is strongly persuasive of its existence. As said by Chief Justice Marshall in the case just quoted (4 Wheat. p. 401, 4 L. Ed. 579), in speaking of the long unchallenged legislation concerning the old National Bank:

"An exposition of the Constitution, deliberately established by legislative acts, on the faith of which an immense property has been advanced, ought not to be lightly disregarded."

And as said by Justice Chase, in considering whether a tax upon carriages was a direct tax within the Constitution (Hylton v. U. S., 3 Dall. 171, 1 L. Ed. 556):

"The deliberate decision of the national legislature (who did not consider a tax on carriages a direct tax, but thought it was within the description of a duty) would determine me, if the case was doubtful, to receive the construction of the legislature."

To this national history may be added the fact that in every state income tax which has been brought to our attention there is the same provision levying on nonresident incomes from sources within the state. Hawaii (Laws April 30, 1901, p. 31, § 1), Missouri (Laws 1917, p. 524, § 1), South Carolina (Civil Code 1912, vol. 1, p. 130, § 354), and Wisconsin (Laws 1911, c. 658, § 3).

In what has been said above in reference to the character of an income tax being in the nature of an excise or privilege levy, the two decisions in the case of Pollock v. Farmers' Loan & Trust Co. (157 U. S. 429, 15 Sup. Ct. 673, 39 L. Ed. 759, and 158 U. S. 601, 15 Sup. Ct. 912, 39 L. Ed. 1108) have not been overlooked. That case determined that income taxes from real estate ("rents, or products, or otherwise") and from personal property ("bonds, stocks, or other forms of personal property") was a direct tax, within the meaning of the national Constitution, and that such a tax upon municipal bonds was invalid "because of want of power to tax the source." The facts of the present case place it without the three classes included in that decision. This income is derived from the prosecution of an oil business consisting of the mining, production, and marketing of oil under a lease for that purpose. If it is not so excluded, then under that decision there could be no question of the right to tax; for although the question in that case was, in this respect, as to the meaning of constitutional terms, yet its determination turned on the identity or close relation between the income and the property which produced it (158 U. S. at 629). Viewing this case as without the decision of that case, yet there are expressions therein which seem to sustain the theory that the tax upon this income is a privilege tax, and within the rule of Springer v. U. S., 102 U. S. 586, 26 L. Ed. 253. In the later opinion the court (158 U. S. at 635, 15 Sup. Ct. at 920 [39 L. Ed. 1108]) says:

"We have considered the act only in respect of the tax on income derived from real estate, and from invested personal property, and have not commented on so much of it as bears on gains or profits from business, privileges, or employments, in view of the instances in which taxation on business, privileges, or employments has assumed the guise of an excise tax and been sustained as such."

In the earlier opinion (157 U. S. at 578, 15 Sup. Ct. at 688 [39 L. Ed. 759]), in commenting on the Springer Case, the court says:

"The original record discloses that the income was not derived in any degree from real estate, but was in part professional as attorney at law and the rest interest on United States bonds. It would seem probable that the court did not feel called upon to advert to the distinction between the latter and the former source of income, as the validity of the tax as to either would sustain the action.

"The opinion thus concludes: 'Our conclusions are that *direct taxes*, within the meaning of the Constitution, are only capitation taxes, as expressed in that instrument, and taxes on real estate; and that the tax of which the plaintiff in error complains is within the category of an excise or duty.'

"While this language is broad enough to cover the interest as well as the professional earnings, the case would have been more significant as a prece-

dent if the distinction had been brought out in the report and commented on in arriving at judgment, *for a tax on professional receipts might be treated as an excise or duty,* and therefore indirect, when a tax on the income of personalty might be held to be direct." (Italics mine.)

The conclusion, therefore, is that the state had jurisdiction to levy an income tax against a nonresident upon that portion of an income of this character derived from sources within the state.

The provision of the law creating a tax lien upon all property in the state is not subject to attack. It does not pretend to create a personal liability, and the lien is no broader than the tax which is based upon the income from all property, business, etc., in the state. Note Scholey v. Rew, 23 Wall. 331, 23 L. Ed. 99, for statute with similar provision.

Nor does the law discriminate against nonresidents. It can cover only such incomes as arise from property within Oklahoma. He is permitted the privilege of making an income in Oklahoma upon as near the same basis afforded residents as is possible to devise.

The preliminary order should be denied.

COTTERAL, District Judge (specially concurring): The two questions argued upon the pending motion pertain to the equity jurisdiction of this court and the validity of the tax in controversy.

It is contended that by section 9 of the Income Tax Act, sections 2 and 7, subd. B, art. 1, c. 107, Session Laws of 1915, relating to ad valorem taxation, are made available to plaintiff as an adequate remedy by state law. Section 2 allows a hearing, upon evidence, before the county board of equalization, and an appeal by transcript to the district court. Section 7 provides for payment and suit, where the action had is not subject to appeal. But section 9 of the Income Tax Act does not purport to make those sections applicable to income taxes. It provides only that the auditor may revise returns and hear complaints, with equivalent powers, and by like remedy and proceedings, as the county board of equalization. His action was invoked by the plaintiff in the way thus authorized. As the terms of section 9 are plain, and it defines the course open to the plaintiff, by familiar rule it cannot be interpreted as contemplating any other remedy.

A sale by the sheriff under the tax warrant authorized by section 10 of the Act, pursuant to section 7392, Revised Laws of 1910, would divest title as in case of execution. This would not, however, justify an equitable remedy, as the mere enforcement of an illegal tax by process constitutes only a trespass, for which the law is presumed to give an adequate remedy, as decided in Shelton v. Platt, 139 U. S. 591, 11 Sup. Ct. 646, 35 L. Ed. 273, and many other cases to the same effect. But by section 11 the tax is declared to be a lien on all the property of the delinquent, and as the plaintiff's property consists partly of land, although mainly of leases, jurisdiction was acquired to free the land of the tax lien. And whether otherwise sustainable, in view of the character of mineral leases in this state, it should be retained in order to determine the entire controversy over an integral assessment. The plaintiff, therefore, is entitled to pursue

a remedy in equity to obtain an adjudication upon the validity of the tax. Ohio Tax Cases, 232 U. S. 576, 34 Sup. Ct. 372, 58 L. Ed. 737; Green v. Louisville & Interurban R. R., 244 U. S. 499, 37 Sup. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88.

On the merits, the complaint is that the situs of the income is, in whole or in part, beyond the limits of the state, and that there is a discrimination as between residents and nonresidents. Primarily, the taxation of incomes is well within the taxing power of a state. But a proper classification of this tax is no doubt vital in determining whether it is to be upheld. That it is not a property tax in the ordinary sense is clear, as taxes of that character are otherwise authorized by the state Constitution, and the income tax is laid on earnings from both property and business. Obviously, it is meant to be the same kind of a tax upon income from either source, and it could not be so if laid on the property yielding the returns. If it should be finally decided in this state that it is a tax on the recipient only, then doubtless its situs for taxing purposes would be at his domicile. But "a statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon that score." United States v. Jin Fuey Moy, 241 U. S. 394, 36 Sup. Ct. 658, 60 L. Ed. 1061, Ann. Cas. 1917D, 854.

With that guiding rule in view, this income tax may well be classified, under the broad terms of the state Constitution of Oklahoma, as a special tax on income of nonresidents, as property having a situs within the taxing jurisdiction of the state, and as being sustained because arising from property or operations, or both, in the state, and the advantages and protection afforded thereto by its laws. Section 12 of article 10 of the Constitution, in authorizing income taxes, does not define their precise character, but wisely leaves it, as well as the method of imposition, wholly to the Legislature, and neither that section nor the Income Tax Act specifies that the income tax shall be regarded as a tax on the recipient. This interpretation is deemed to be quite in harmony with the views of the State Supreme Court, as manifested in its decisions.

The state lays this burden on an asset or species of property originating in the state, although it may be intangible for a period, and its exact and ultimate value may be realized later, perhaps outside of the state. See Adams Express Co. v. Auditor, 166 U. S. 185, 17 Sup. Ct. 604, 41 L. Ed. 965. This may be a liberal exercise of the taxing power, but the power exists, and it is all-sufficient to sustain the tax. A debt owing on a bank deposit in Missouri to a citizen of Kentucky is taxable in both states. Fidelity & Columbia Trust Co. v. City of Louisville, 245 U. S. 54, 38 Sup. Ct. 40, 62 L. Ed. —— (Nov. 5, 1917). The jurisdiction of the state of domicile "over a creditor's person does not exclude the power of another state, in which he transacts his business, to lay a tax upon the credits there accruing to him against resident debtors, or thus to enforce contribution for the support of the government under whose protection his affairs are conducted." Liverpool, etc., Ins. Co. v. Orleans Assessors, 221 U. S. 346, 31 Sup. Ct. 550, 55 L. Ed. 762, L. R. A. 1915C, 903. And the power to tax is

evidently not ruled by the place of payment. Upon like principle, the receipt of income outside of this state does not control the validity of the tax.

The element of personal ability or services in acquiring the income may be disregarded. It enters into all income and causes the returns from an occupation. But it has not been deemed important in the taxation of property, and need not be deducted from an assessment.

No constitutional objection to the tax here involved is found from the supposed discrimination against nonresidents. While the same exemptions are allowed, only a resident may deduct losses outside of the state. If a case were presented where losses of that kind had occurred, the question would arise whether the inequality was such that the taxpayer might successfully complain of it. But there is no occasion to decide the question, as the plaintiff does not allege such losses and consequent prejudice. The fact that discrimination might arise does not render the law void, and that is all the plaintiff contends in his bill. A law may be good on its face, but fail because of its application. Yick Wo v. Hopkins, 118 U. S. 356, 6 Sup. Ct. 1064, 30 L. Ed. 220. Here the law is apparently valid, and a case of harmful application should not be assumed.

As stated, this tax should be regarded as laid upon a special kind of property, consisting of the net returns from property or business in the state, and as thus classified under the state Constitution, the power of the state being established, the tax must stand. The motion for a temporary injunction is properly denied.

CAMPBELL, District Judge (dissenting). This is a suit by the plaintiff, a nonresident of Oklahoma, to enjoin the defendants from enforcing, or attempting to enforce, the collection of a tax assessed against him for the year 1916 by the taxing authorities of the state of Oklahoma, based upon the net income of the plaintiff for that year from his business as an oil and gas producer in the state. An application for preliminary injunction has been heard by the court, organized under the provisions of section 266 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1162 [Comp. St. 1916, § 1243]), Hon. KIMBROUGH STONE, Circuit Judge, and Hon. JOHN H. COTTERAL, and the writer, District Judges, sitting. Supplementing oral argument, counsel were given leave to file briefs, which have now been submitted.

At the threshold of the case it is urged on the part of the defendants that the court is without jurisdiction to entertain this action, because the plaintiff is afforded a plain, adequate, and complete remedy at law by the provisions of section 7, c. 107, Session Laws of Oklahoma 1915. A careful consideration of this section raises grave doubts as to whether it applies at all to cases involving the state income tax law which is the subject of this controversy. At any rate, even if it may be said to apply, it cannot be said, under the facts of this case, to afford that adequate and complete remedy afforded by a court of equity. The relief sought presents matters clearly of equitable cognizance, and hence we conclude that this court has jurisdiction.

Upon consideration, it is the writer's conclusion that the preliminary

injunction should be granted, for the reason that the state has no jurisdiction to subject a nonresident to its income tax, even though a part or the whole of the income of such nonresident may arise from property owned or business conducted by him within the state. The income tax act involved is chapter 164 of the 1915 Session Laws, and is entitled "An act providing for an income tax and repealing article 17, chapter 72, Revised Laws of Oklahoma, 1910." By section 1 of the act it is provided that:

"Each and every person in this state shall be liable to an annual tax upon the entire net income of such person arising or accruing from all sources during the preceding calender year, and a like tax shall be levied, assessed, collected and paid annually upon the entire net income from all property owned, and of every business, trade or profession carried on in this state by persons residing elsewhere."

The taxing power of the state was defined by Justice Field in State Tax on Foreign Held Bonds, 15 Wall. at page 319, 21 L. Ed. 179, as follows:

"The power of taxation, however vast in its character and searching in its extent, is necessarily limited to subjects within the jurisdiction of the state. These subjects are persons, property, and business. Whatever form the taxation may assume, whether as duties, imposts, excises, or licenses, it must relate to one of these subjects. It is not possible to conceive of any other, though, as applied to them, the taxation may be exercised in a great variety of ways."

This is now the settled law defining and limiting the state's taxing power. Cooley on Taxation (vol. 1, p. 25). In the case last cited, Judge Field also said:

"Property lying beyond the jurisdiction of a state is not a subject upon which her taxing power can be legitimately exercised. Indeed, it would seem that no adjudication should be necessary to establish so obvious a proposition."

In Union Transit Company v. Kentucky, 199 U. S. at page 204, 26 Sup. Ct. at page 37 [50 L. Ed. 150, 4 Ann. Cas. 493], it is said:

"It is essential to the validity of a tax that the property shall be within the territorial jurisdiction of the taxing power. Not only is the operation of state laws limited to persons and property within the boundaries of the state, but property which is wholly and exclusively within the jurisdiction of another state receives none of the protection for which the tax is supposed to be compensation."

In view of the foregoing well-founded and indisputable rules governing the state's taxing power, it is of prime importance that we first classify the income tax under consideration; that is, determine whether it is a tax upon the person, the property, or the business of the plaintiff. The authority for laying the tax is found in section 12 of article 10 of the state Constitution, wherein, after providing for the taxation of tangible property, real and personal, within the state on an ad valorem basis, it is provided:

"The Legislature shall have power to provide for the levy and collection of license, franchise, gross revenue, excise, income, collateral and direct inheritance, legacy, and succession taxes; also graduated income taxes, graduated collateral, and direct inheritance taxes; graduated legacy, and succession taxes; also stamp, registration, production, or other specific taxes."

It is very plain that the framers of the state Constitution had the conception of the income tax provided for as something different and distinct from a license, franchise, gross revenue, excise, legacy, or succession tax. From a reading of the Oklahoma income tax act, it is clear that, so far as it relates to residents of the state, the Legislature did not intend that it should be levied upon or have any relation or reference to property or the operations of any trade or business within the state; for, as to residents of the state, the tax is levied upon "the entire net income of such persons arising or accruing from all sources," including, of course, those without as well as those within the state; and it must be presumed that the Legislature well understood that they had no power to tax property or business operations outside of the state. A resident of the state is made subject to a tax upon his net income, even though all of it arises from property or activities without the state. Taxation and protection are reciprocal. The right to tax an individual results from the general protection afforded him and his property by the state. Cooley on Taxation, vol. 1, p. 22. The resident of the state is subjected to the income tax for the protection the state affords his person, not his property or any right to do business in the state exercised by him; else it could not be made to extend to a resident who neither had property nor did business within the state, and by terms of the act it is a *like tax* which is attempted to be levied upon nonresidents to the extent of their net income from property owned, and business, trade, or profession carried on in the state.

The Supreme Court of Wisconsin, discussing the income tax of that state, said in Manitowoc Gas Co. v. Wisconsin Tax Commission, 161 Wis. 111, 152 N. W. 848:

"Our income tax is a burden laid upon the recipient of the income, whether derived from real estate, personal property, or labor, the amount of which is determined by the amount of the total net income derived from those sources, singly or combined."

The same court, in State ex rel. Moon v. Tax Commission (Wis.) 163 N. W. 639, said:

"Much confusion of thought arises from regarding the income tax as a tax that is levied upon or attaches to property as such, irrespective of the person sought to be taxed. It is the recipient of the income that is taxed, not his property; and the vital question in each case is, Has the person sought to be taxed received an income during the tax year? If so, such income, unless specifically exempted, is subject to a tax, though the property out of which it is paid may have been exempt from an income tax in the hands of the payor. It is the relation that exists between the person sought to be taxed and specific property claimed as income to him that determines whether there shall be a tax. If the person sought to be taxed is the recipient during the tax year of such specific property as income in its ordinary significance, then the person is taxed. But the tax is upon the right or ability to produce, create, receive, and enjoy, and not upon specific property. Hence the amount of the tax is measured by the amount of the income, irrespective of the amount of specific property or ability necessary to produce or create it. In the ordinary acceptation of the term, this may be said to be a tax upon income as the statute denominates it. But the tax does not seek to reach property, or an interest in property, as such. It is a burden laid upon the recipient of an income. State ex rel. Manitowoc Gas Co. v. Wis. Tax Comm., 161 Wis. 111, 152 N. W. 848; State ex rel. Bundy v. Nygaard, 163 Wis. 307, 158 N. W. 87 [L. R. A. 1917E, 563]."

The Oklahoma income tax is clearly not a property tax in so far as it relates to residents of the state. As said by the Supreme Court of Wisconsin in relation to the income tax of that state, the income tax in this state, as applied to residents, does not seek to reach property or interest in property as such; it is a burden laid upon the recipient of the income. While conceding that this income tax is not a property tax, nor a tax directly imposed upon any business, trade, or profession carried on by the nonresident, counsel for defendants insist that for "jurisdictional purposes" the fact that the income subjected to the tax is derived from property or business within the state may be looked to. In their brief counsel for defendants say:

"Let us again here emphasize the fact that income has no relation to the property producing the same, nor to the business from which the same was produced, except for jurisdictional purposes alone; and this is not peculiar to income tax alone, but applies with equal force to other forms of taxation."

But this cannot be sound. In the first place, it will not do to say that this tax may be imposed upon residents of the state upon one theory, that is, the protection they receive in their persons, irrespective of situs of property or business activity, and upon nonresidents, over whose persons the state has no jurisdiction, upon another theory, that the income arises from certain property or business enjoying the state's protection. If the tax is one pertaining solely to the person of the taxable, as we have seen is clearly the case in relation to residents, then it cannot be imposed upon nonresidents, for they are not within the taxing power of the state so far as their persons are concerned. This was evidently in the minds of the legislators, and hence they attempted to bring their incomes within the state's jurisdiction to tax them by attempting to relate them to the sources within the state from which they might be derived. But this, while denominated an income tax, is in reality a tax upon the property or business producing the income, measured by the income. The basis of such tax must be the protection which the state affords the property or business, and no mere legislative nomenclature can make it other than a tax upon such property or business. While the declaration of the lawmaking power, as to the character of the tax involved, is entitled to much weight, the mere declaration contained in a statute that it shall be regarded as a tax of a particular character does not make it such if it is apparent that it cannot be so designated consistently with the meaning and effect of the act. Flint v. Stone-Tracy Co., 220 U. S. at page 145, 31 Sup. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312. In Knowlton v. Moore, 178 U. S. 83, 20 Sup. Ct. 764, 44 L. Ed. 969, it was said:

"As a mere abstract, scientific, or economical problem, a particular tax might possibly be regarded as a direct tax, when, as a practical matter pertaining to the actual operation of the tax, * * * a court would not be justified, for the purpose of invalidating the tax, in placing it in a class different from that to which its practical results would consign it. Taxation is eminently practical, and is, in fact, brought to every man's door; and, for the purpose of deciding upon its validity, a tax should be regarded in its actual, practical results, rather than with reference to those theoretical or abstract ideas whose correctness is the subject of dispute and contradiction among those who are experts in the science of political economy."

In the case last mentioned it was held that the case of Pollock v. Farmers' Loan & Trust Co., 157 U. S. 429, 15 Sup. Ct. 673, 39 L. Ed. 759, Id., 158 U. S. 601, 15 Sup. Ct. 912, 39 L. Ed. 1108, has decided these two things:

"(1) That no sound distinction existed between a tax levied on a person solely because of his general ownership of real property, and the same tax imposed solely because of his general ownership of personal property. (2) That the tax on the income derived from such property, real or personal, was the legal equivalent of a direct tax on the property from which said income was derived, and hence must be apportioned."

In Railroad Co. v. Collector, 100 U. S. 595, 25 L. Ed. 647, Mr. Justice Miller, considering the federal income tax law as amended by the act of 1866, imposing a tax of 5 per cent. on interest on bonds, dividends, or profits of certain corporations, said:

"The tax, in our opinion, is essentially an excise on the business of the class of corporations mentioned in the statute. The section is a part of the system of taxing incomes, earnings, and profits, adopted during the late war, and abandoned as soon after that war ended as it could be done safely. The corporations mentioned in this section are those engaged in furnishing roadways and waterways for the transportation of persons and property, and the manifest purpose of the law was to levy the tax on the net earnings of such companies."

But such, we have seen, is not the conception of the more recent income tax legislation, pursuant to state constitutional provisions. Keeping in mind that the taxing power of the state is limited to the three subjects—persons, property, and business—and that, as said by Justice Field in the case involving tax on foreign-held bonds, supra, whatever form taxation may assume, it must relate to one of these subjects, and keeping in mind also the inability of the state to subject to tax the person of a noncitizen as well as any property lying without the state, or any business transacted without the state, the tax under consideration must have relation to the person, property, or business of the defendant. We have seen that as to citizens and residents of the state it clearly has relation to the person of the taxable as the recipient of the income, to the exclusion of any consideration of the source of such income, based upon the theory of the protection which the state affords him in his person as one of its citizens; but this theory fails when we come to consider noncitizens, for the state affords them no protection in their persons, and, being outside its territorial limits, it has no power or jurisdiction to impose upon them a tax purely personal in its nature. Nor does the fact that such noncitizen owns property or does business within the state empower the state to impose upon him a purely personal tax. It may tax such property or business, but it cannot, by calling such tax an income tax, change the nature of the tax. It would still be a property tax or an excise tax, according as it related to property or business. It is clear that the Legislature, realizing its inability to subject noncitizens to a tax purely personal in its nature, but desiring to bring them within the operation of its income tax law to the extent that their incomes are derived from property owned or business transacted within the state, has attempted to impose upon them what it styles an income tax, but which is es-

sentially a property or excise tax, measured by the net income derived from specific property or business within the state. But the property and business of noncitizens, while properly subject to any existing tax legislation operating alike upon citizens and noncitizens, may not be singled out and subjected to a tax which is not also imposed upon the property and business of citizens, merely because being that of noncitizens. The United States Constitution, art. 4, § 2, provides that:

"The citizens of each state shall be entitled to all the privileges and immunities of citizens of the several states,"

—and among such privileges and immunities of noncitizens of a state is the right to protection from discrimination against them in favor of citizens of the state in matters of taxation. In Ward v. Maryland, 12 Wall. 418, 20 L. Ed. 449, the court said:

"Attempt will not be made to define the words 'privileges and immunities,' or to specify the rights which they are intended to secure and protect, beyond what may be necessary to the decision of the case before the court. Beyond doubt those words are words of very comprehensive meaning, but it will be sufficient to. say that the clause plainly and unmistakably secures and protects the right of a citizen of one state to pass into any other state of the Union for the purpose of engaging in lawful commerce, trade, or business, without molestation; to acquire personal property; to take and hold real estate; to maintain actions in the courts of the state; and to be exempt from any higher taxes or excises than are imposed by the state upon its own citizens. Cooley, Const. Lim. 16; Brown v. Maryland, 12 Wheat. 449 [26 L. Ed. 678]."

The tax under consideration is, as to citizens of Oklahoma, properly termed an income tax, because it is imposed upon them as a purely personal tax, measured by their incomes, in consideration for the protection which the state affords them in their persons, irrespective of the source of such income, or whether it be within or without the state, and the power of the state to levy such a tax upon its citizens is not questioned. But such a tax cannot reach citizens and residents of other states. In their persons they are only subject to the taxing power of the states of their domicile. If they acquire property or do business in this state, they may be taxed as to such property or business to the extent, and only to the extent, that citizens of this state are taxed on similar property or business. Provisions for such taxes are found in laws other than the income tax law now being considered, and they apply to citizens and noncitizens alike. To the taxes provided by these laws, so far as they exist, the property and business of the plaintiff within this state are subjected equally with the property and business within the state of all other persons, resident and nonresident. This being true, to subject the plaintiff to this so-called income tax, which, as we have seen, as applied to a nonresident, is essentially a tax upon his property and business within the state, to which the property and business of citizens and residents of the state are not subjected, is to deny to him the privileges and immunities of citizens of the state; for while by the same law a tax is imposed upon citizens of the state, it is, as we have seen, a purely personal tax, not in any true sense a tax upon their property or business, and a tax to which the state cannot subject the plaintiff, because, being a citizen

and resident of another sovereign state, this state has no jurisdiction to tax him on his person. Whether he shall be subjected to such personal income tax is a matter solely within the power of the state of his domicile to determine.

While styled an income tax, the subject of this tax is the recipient of the income. The income merely affords the measure of tax. This is the dominant conception in all modern so-called income tax legislation by the several states, so far as relates to residents and citizens of the state. The situs of the source of the income is ignored. The power to tax rests in the jurisdiction exercised by the state over the person receiving the income, and that its jurisdiction may not extend to the property or business producing the income is considered immaterial. The attempt to combine with legislation providing for such a tax a provision for a so-called income tax subjecting the net incomes of nonresidents upon property or business within the state, founded not upon jurisdiction of the person, but upon the fact that the situs of the property or business is within the state, cannot, in my judgment, be sustained. They are essentially separate and distinct provisions, relating to separate and distinct subjects of taxation, and the latter provision as to nonresidents is in no wise strengthened because it is found coupled with the former. It is essentially a tax upon the property or business involved. In fact, it must be that, for it will not be contended that the state has the power to subject noncitizens to a purely personal tax. For the purpose of determining its validity, it must be considered as standing alone; and, of course, it will be conceded that an act imposing a tax upon the property or business owned or conducted within the state by nonresidents, without imposing a like tax upon the property or business of residents, cannot be sustained.

It is suggested that, because nonresidents can come into Oklahoma and make fabulous profits from the exploitation of its great natural resources, it is desirable that the state furnishing such opportunities should, as a consideration therefor, be permitted to exact a return in taxation commensurate with the opportunities afforded; and it is further suggested that, if these noncitizens cannot be taxed on their incomes as is sought to be done here, many operators who are now citizens and residents of the state will expatriate themselves, so as to avoid the income tax. But these are considerations which in no sense affect the legal questions involved. The Constitution of the United States has decreed that the natural resources of Oklahoma, however great, as well as those of every other state, are subject to development by all citizens of the United States alike, regardless of state lines, and citizens of other states may acquire property and do business here without subjecting themselves to liability for any purely personal taxes such as may be assessed against citizens and residents, and shall be subject to only such taxes on their property and business within the state as shall be levied upon similar property and business of citizens and residents of the state.

I am not unmindful of the fact that several other states have enacted laws similar to the one under consideration, and that the federal in-

come tax law provides for the collection of a tax from aliens and nonresidents of the United States upon incomes accruing to them from property or business within the United States. No case directly deciding the question here involved has been found, and it is suggested in section 15 of Black on Income Taxes, published in 1913, that this and kindred questions relating to the state income tax laws have not as yet been authoritatively settled by the courts. But for the foregoing reasons I am forced to the conclusion that as to the plaintiff, who is not a citizen or resident of the state, the law is invalid as without the taxing power of the state, in so far as it may be said to attempt to impose a tax solely upon the person, because the plaintiff is not a citizen or resident of the state. If as to nonresidents it be treated as a tax upon property or business, then it violates the privileges and immunities features of the federal Constitution.