DE GANAY v. LEDERER.

(District Court, E. D. Pennsylvania. February 14, 1917.)

No. 3472.

1. INTERNAL REVENUE ⬿7—INCOME TAX—PROPERTY OF NONRESIDENT—
STOCKS AND BONDS.
   The provision of Act Oct. 3, 1913, c. 16, § 2, 38 Stat. 166 (Comp. St. 1913,
§§ 6319–6336), levying a tax on the entire net income from all property
owned in the United States by persons residing elsewhere, imposes a tax
on the income from corporate stocks and bonds owned by a nonresident
alien, where the stock certificates and bonds were kept in this country by
an agent, who collected the income thereon for the owner, since the cer-
tificates and bonds have come to be commonly spoken of as the property,
which, strictly speaking, they merely represent.
   [Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 8–10.]

2. STATUTES ⬿188—CONSTRUCTION—KNOWN MEANING OF WORDS.
   Where words are used in an act of Congress which have a well-known
and universal use, and which, so read, express a meaning which Congress
may have intended, the court is justified in assuming that they were used
to express that meaning.
   [Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 266, 267, 276.]

3. STATUTES ⬿225¾—CONSTRUCTION—LEGISLATIVE CONSTRUCTION.
   While legislative construction of prior acts is of value, the enactment
of a subsequent more definite provision is not necessarily a construction
of the former provision, but may be the enactment of a different provision,
and should be so held to avoid retroactive legislation, if it differs from
the judicial construction given to the former act.
   [Ed. Note.—For other cases, see Statutes, Cent. Dig. § 306.]

4. STATUTES ⬿219—CONSTRUCTION—EXECUTIVE CONSTRUCTION.
   Great weight and due deference is given to departmental or other
executive construction of statutes, but the acceptance of such construc-
tion is limited by the principle that the intention of the Legislature must
govern.
   [Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 296, 297.]

5. STATUTES ⬿245—CONSTRUCTION—REVENUE LAWS.
   Revenue statutes are to be so construed as to promote their main pur-
pose, not strictly construed in favor of the taxpayer.
   [Ed. Note.—For other cases, see Statutes, Cent. Dig. § 326.]

6. TAXATION ⬿93(1)—SITUS OF PROPERTY—PERSONAL PROPERTY.
   Notwithstanding the legal maxim that the situs of intangible personal
property is the domicile of the owner, such property may be given a spe-
cial or particular situs for taxation, if the taxing power has jurisdiction
over the rem as a practical fact.
   [Ed. Note.—For other cases, see Taxation, Cent. Dig. § 182.]

At Law. Action by Emily R. De Ganay against Ephraim Lederer
to recover the amount paid under partition as income tax. On final
hearing. Judgment rendered for defendant.

J. W. Bayard and John G. Johnson, both of Philadelphia, Pa., for
plaintiff.

Robert J. Sterrett, Asst. U. S. Atty., and Francis Fisher Kane, U.
S. Atty., both of Philadelphia, Pa., for defendant.

⬿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

DICKINSON, District Judge. This case was tried under the provisions of the statutes by the court without the intervention of a jury. The main facts are few and not in dispute. There is but one question in the case, and that one of law. The formal findings of · fact, which are necessary, are found in the answers to the requests submitted by the parties, leave to file which, together with requests for conclusions of law, after the views of the court upon the one question discussed at the argument had been made known to counsel, was allowed by the court.

[1] The plaintiff is a nonresident alien. She is the owner of property, the income from which is collected for her by the Pennsylvania Company as her agent or attorney in fact, or by whatever term the company is designated in its relations with her. The defendant demanded the amount now sued for as the tax on this income directed to be levied and collected by section II of the act of October 3, 1913. The tax was paid under protest, and its return demanded in accordance with the provisions of the statutes on the subject. It is conceded that, if the sum paid was lawfully collectible, the plaintiff cannot recover, but otherwise is entitled to judgment. The collection is justified, if at all, by the provision of the act above cited. The pertinent provision is:

"The entire net income from all property owned and every business," etc., "carried on in the United States by persons residing elsewhere."

No other question than the proper construction of the statute is involved. It is admitted (at least arguendo) that Congress could have lawfully imposed this tax upon the income of plaintiff. The sole question is: "Has it done so by this act?"

There is always a temptation; in the discussion of questions of this kind, to wander into the domain of economics or invade the realm of metaphysics. A yielding to this temptation would result in a discussion which would be well-nigh interminable. Two or more suppositious cases as crude illustrations will speed us to the point. A nonresident alien is the owner of omnibusses, which are run as public conveyances; the line being operated for the owner by his employés and agents. The income derived therefrom is admittedly subject to the payment of the tax. The same line of omnibusses belongs to a corporation, the stock of which is owned by the same alien. The dividends are asserted not to be subject to the tax.

Take two other cases to which the same distinction applies: A nonresident alien owns real estate (assuming alien ownership was permissible). The yield in rentals is conceded to be subject to the tax. The same alien recovers the same sum from the same property in the form not of rentals (in the sense before expressed), but in the form of ground rent. It is, of course, not asserted that the income is not subject to the tax, because the latter form of property is itself real estate, but this illustrates the distinction made in its double aspect. The argument is that the tax is payable in the one case, but not in the other, because in the one case Congress has imposed the

tax and in the other has not. The minor premise on which the argument proceeds is asserted, because Congress has seen fit to tax not income derived by an alien from property belonging to him (which might be beyond its reach, long as the arm of the taxing power is known to be), but only such property if in the United States.

The further assertion that property of this incorporeal, intangible kind is not here, but in the country in which the alien is domiciled, is backed by the maxim of the law that "personal property follows the person." The admission that property, whether real or personal, owned by a nonresident alien, might be in this country, and, in consequence, be made taxable by the act, enforces the argument because the distinction between the two kinds of property lays ground for the inference that Congress meant to tax the one and not the other.

The argument has more than plausibility; it has real force, not merely because of the language chosen by Congress in which to express its thought, but also because the considerations which may have moved Congress to make such a distinction are obvious. The distinction between a physical thing and the usufruct, or between what a corporation (assuming all its possession to be of the physical kind) and what a stockholder owns, is clear enough. The word "property" is used to designate not only the right of a person in or to a thing, but also is applied to the thing itself, at least when it can be visualized. Property of the kind with which we are now concerned is not a thing in any physical sense, but is an abstraction, a concept. The thought that it can have no abiding place other than that arbitrarily assigned to it by the quoted maxim appeals strongly to any one trained to think in terms of the principles of the law. The retort that the maxim is no maxim at all, but a mere fiction, is of no aid to us, because, granted that it be a fiction, there is no other fiction, and no maxim of the law which locates property of this kind elsewhere. As property of this kind is merely a concept or a right, the truth is that it cannot be "in" any place other than the mind of the person to whom the right belongs. The phrase that the right of property is in a person, or in the owner, or even that it resides in him, is an allowable one. To give it any other abiding place requires the ipse dixit of the law. The quoted maxim really is a phrase which voices a principle of the law that, when the locus in quo of property of this kind is spoken of or becomes important to find, it is to be understood to be wherever the owner resides, and to be regarded as if it had physical existence at that place.

The fictions which form part of the science of the law have been the subjects of many a eulogy, and this is one which has been universally accepted and acted upon from time out of mind. The accepted and conventional meaning of any expression used in a statute must, of course, yield to the legislative mandate; and it is urged that we must look in every law for what the lawmaker meant, and, when this is found, words which may before have been used in a different sense from that in which he has used them must be given the meaning which he has attached to them. In this way, "white," as it is argued, may be even read to mean "black."

Resort has been had to the later act of Congress as expressive of the meaning sought, and as declarative of what was meant by the act of 1913. Resort is also had to the executive construction placed upon the act now under consideration.

It is further pressed upon our attention that it is proper to assume that Congress had in mind a practical purpose, and had no thought of an idle and fruitless enactment, and that when a law is open to two constructions, one of which is promotive of its main and general purpose, and the other wholly destructive of it, that construction should be accepted which gives the law real meaning and not one which emasculates it. This principle of construction is appealed to because of the statistical fact that a tax upon so-called investment and like sources of income would yield a substantial sum, but one confined to physical things would be negligible.

[2] These supports of the contention of the defendant are attacked by the answer that at least one, and the preferred, place in which to look for the meaning of Congress is the language employed to express that meaning. When we find words which have a well-known and universal use, and which, if so read, express a meaning which Congress at least may have intended, we are justified in assuming they were so used, and not justified in giving them a strange and before unheard-of meaning, in order to force a construction which, if that meaning was in fact intended by Congress, might have been expressed in other and apt words.

[3] Legislative constructions of prior acts have all the value of expressions of opinion by those to whose opinions weight and importance is attached. Inasmuch, however, as such an opinion is that of an autocrat who can impose his will by changing the law, the distinction must always be observed between an opinion of what the law has been and a new enactment. If such subsequent statute gives to the prior one a meaning different from its found meaning as judicially construed, the later statute is a new enactment, no matter what its form. Any requirement to read into the former a meaning which is found only in the latter partakes, as do all retroactive statutes, too much of the ex post facto vice. In criminal statutes indulgence in this vice is forbidden by the Constitution, and the courts will not ascribe such purpose to the legislative branch, if a different purpose can be found. The later taxing act admittedly imposes a like tax to that collected in this case. There is, however, as much warrant for saying that it imposes a new tax as that it reimposes the same tax. The real state of mind of Congress may have been, and probably was, that the executive enforcement of the act of 1913 brought to light an ambiguity in that act which it was deemed wise to clear up, and that Congress had no thought of construing the former act, but was content to leave it to the courts to be judicially construed, and was merely guarding for the future against the at least possible construction for which this plaintiff contends.

[4] Great weight and due deference is always given to departmental or other executive constructions of laws. The acceptance of such

constructions is, however, always limited by the thought that the imposition of a tax is a legislative and not an executive act, and we are brought back again to the judicial construction of the statute. A like observation may be made with respect to the thought that Congress must have intended this law to yield revenue, and because of this should be given such a construction as will advance this purpose and not nullify it.

The at least doubt still remains of whether Congress did not at first either overlook the species of property now under consideration or accept the politico-economic view entertained by many minds that it is a futile thing to attempt to tax some species of property (as, for instance, moneys at interest), because the final result is to impose a double tax upon the interest payer, or work to the disadvantage of the country by retarding the inflow of capital. The fact that Congress afterwards discovered what they had at first overlooked, or changed its mind as to its taxing policy, throws no helpful light upon the first law, by which we are able to read it differently from what we otherwise would. It is thus seen that, no matter by what path we seek to reach an answer to the question involved, it leads back every time to the act of Congress.

This case was argued by counsel, not only with ability, but in that spirit of frankness and open-mindedness which is always the accompaniment of great abilities. Counsel for the United States feel free—indeed, feel compelled—to confess that there is such an ambiguity in the act as to make its meaning doubtful. The differing constructions contended for by counsel are asserted with equal confidence. If a proposition of law be, as it has cynically been defined to be "any proposition confidently advanced and plausibily supported," we are not aided by the arguments, able as they are, because we have been subjected to the allurements of two charmers equally enticing.

[5] We accept the general principle advanced by counsel for the United States that in the federal jurisdiction, as in that of some of the states, although it is otherwise in most jurisdictions, revenue statutes are to be so construed as to promote their main purpose, and that the principle of a strict construction in favor of the taxpayer is repudiated. Even this, however, will not justify the courts in refusing to recognize the expressed will of Congress, and we are sent back again to the enactment to gather this will.

Human language is a living thing, and not an unyielding mummy cloth in which thoughts are enwrapped. Language changes and grows, and words shift in meaning with the changing ideas of the people out of whose expressions of their thoughts through the use of words the language is evolved. It is a familiar experience that things which exist at first and are spoken of as theories or mere concepts soon become recognized facts, and are given in thought and words body and substance. Physical science abounds in illustrations of this, and in both business affairs and in the law we meet with them. It is really the same tendency as the disposition to personify things, and to reduce the abstract to the concrete. This concept of property as an in-

tangible thing belongs to this same category. A chose in action becomes a concrete book account or note. The stockholder in a corporation owns property, of which his certificate of stock is but the evidence and still exists in all its fullness, whether the certificate be lost or destroyed. A bank note is but a promise to pay, but the concept of it soon changes to that of regarding it as itself concrete property, occupying space and having a situs. The same concept is readily extended to deposits in bank and to bonds, and indeed to what are known under the generic term of investments, mortgages, and ground rents, and the like. They all come to be visualized, until they have an existence as real as that of physical things. Indeed, it is allowable in common speech, and just as intelligible, to speak of a person having ground rents in America, or indeed investments in America, as it is to say he had or owns a farm in America.

This, of course, is not the strictly scientific view, nor does a person speak with scientific accuracy when so speaking, but none the less they are expressing a definite thought clearly. Indeed, if a person were to speak in scientific terms of some of the commonest things of life, he would not merely be thought to be pedantic, but would be utterly unintelligible to many. A professor of economics would have difficulty in convincing persons who were indeed persons of intelligence that they did not have money in their pockets if they felt crisp bank notes crinkling in their fingers. The same person, if his ownership of bonds or stock was questioned, would think he had settled the dispute by producing the bonds or stock certificates. He would produce them, not as if he was bringing forth evidence of his ownership, but the very property which he owned. Laws, particularly those by which the common people are to be guided, are to be interpreted as the common speech is understood, and are not to be translated into scientific jargon.

The courts, in the interpretation of tax laws, have recognized this, and made the grasp upon the thing to be taxed turn upon the fact of jurisdiction rather than upon the character of the property. Property is "in" the United States when it can here be reached, whether that property be a house and lot, or whether it be bonds and mortgages. It may result in what in a sense and a very practical sense is double taxation; but such may be the result of a law which taxes both a house and lot, and a ground rent issuing thereout or a mortgage thereon. The thought now in mind is a different thought from that which would be uppermost, if the attempt were made to tax a man on the personal property he owned, without regard to its situs, but merely because he owned it in a jurisdiction other than that of his domicile.

To return from these abstractions to the precise question before us, our conclusion is that this act of Congress, if read in the light of critical accuracy, does not tax the property on which this tax was levied; but if the language is interpreted in the light of the commonly accepted meaning of the words used, it does tax it, and the tax was properly collected. This finding results in a judgment for the defendant, with costs, which judgment is directed to be entered.

[6] We feel that this conclusion is compelled by the necessity to get into harmony with authoritative rulings, among which the following may be cited:

The thought is that, notwithstanding the legal maxim, or fiction, or fact (call it what you will), that the situs of intangible personal property is the domicile of the owner, the state may nevertheless give to property (such as corporate stocks, bonds, and the like) a special or particular situs for the purposes of taxation, and this power is limited only by the jurisdiction of the taxing power over the rem as a practical fact. Corry v. Baltimore, 196 U. S. 466, 25 Sup. Ct. 297, 49 L. Ed. 556; In re San Antonio Co. (D. C.) 228 Fed. 984; In re Berthoud (D. C.) 231 Fed. 529; Lynch v. Turrish, 236 Fed. 653, —— C. C. A. ——; Pullman's Co. v. Pennsylvania, 141 U. S. 22, 11 Sup. Ct. 876, 35 L. Ed. 613; Buck v. Beach, 206 U. S. 392, 27 Sup. Ct. 712, 51 L. Ed. 1106, 11 Ann. Cas. 732; Van Allen v. Assessors, 70 U. S. (3 Wall.) 573, 18 L. Ed. 229; Liverpool v. Orleans, 221 U. S. 354, 31 Sup. Ct. 550, 55 L. Ed. 762, L. R. A. 1915C, 903.

Nor do we think the cases cited by plaintiff to be in conflict with the conclusion reached, if the distinction between taxing jurisdiction exercised because of jurisdiction of the person and that exercised because of jurisdiction of the rem be kept in mind. Kirtland v. Hotchkiss, 100 U. S. 491, 25 L. Ed. 558, may be distinguished on this ground.

The opinion in Cleveland v. Pennsylvania, 82 U. S. (15 Wall.) 300, 21 L. Ed. 179, undoubtedly contains expressions which support the argument of counsel for plaintiff here. The case was, however, ruled upon the principle of the inviolability of the obligations of contracts, and upon the power to tax, not upon whether the law did tax. The case, therefore, if the argument is pushed to its logical limits, rules that Congress was without the power to levy this tax. This conclusion is not only not pressed, but the question before us was expressly limited to whether Congress had taxed, not whether it could. It is interesting to note (what was before not observed) that Mr. Justice Field, who delivered the opinion of the court, recognized that not only tangible personal property might have a situs different from that of the domicile of the owner, but that state and municipal bonds and other forms of intangible property were recognized as in themselves physical property, and known as such in common speech, and therefore also capable of having a situs of their own. He distinguishes between municipal bonds, and the other property of like kind enumerated by him, and corporate bonds. This opinion was delivered in 1872. What was recognized by him as true of municipal bonds in 1872 seems to be equally true of corporate bonds and stocks in 1913. It would be an interesting confirmation of the truth of the observations hereinbefore made if public usage, which in 1872 included state and municipal bonds and bank notes among tangible possessions, had progressed in 1913 to the point of embracing all stocks and bonds in the same classification.

Union Co. v. Kentucky, 199 U. S. 194, 26 Sup. Ct. 36, 50 L. Ed. 150, 4 Ann. Cas. 493, would seem to be rather in accord with the con-

clusion we have reached than out of harmony with it. It clearly recognizes the separate situs of tangible property, and carries the practical principle of the power to tax being dependent upon jurisdiction to the limit of holding property out of the jurisdiction not to be taxable. It places what may be called the right to tax upon the practical fact of control of the person or grasp of the rem, and seems to recognize mortgages and stocks as so far tangible as to have a situs of their own.

Provident v. Kentucky, 239 U. S. 103, 36 Sup. Ct. 34, 60 L. Ed. 167, L. R. A. 1916C, 572, was the case of an attempt by the state to tax a corporation for the privilege of doing business within the state. It was recognized that a state had the power to so tax, if the corporation was so doing business, but was held that the state could not tax if the corporation was not so doing business, and that the mere collection of premiums before earned, although still unpaid, was not such doing of business. We see no command in this case to find for the present plaintiff.

The question before us is recognized as a close one. Where the meaning of a statute is doubtful, and either of two constructions may be given it, the choice is always more or less an arbitrary one, and the ruling made partakes too much of the "rescript" character to be entirely satisfactory. The choice, however, must be made, and we have made the best choice we could.