GENERAL MOTORS ACCEPTANCE CORP. et al. v. HULBERT, County Assessor.

No. 30733. Feb. 17, 1942.

Dissenting Opinion Feb. 20, 1942.

Rehearing Denied May 19, 1042.

*125 P. 2d 975.*

W. F. Wilson and Pierce, McClelland, Kneeland & Bailey, all of Oklahoma City, for plaintiff in error General Motors Acceptance Corporation.

Lewis R. Morris, County Atty., of Oklahoma County, and B. C. Logsdon, Asst. County Atty., both of Oklahoma City, for intervener Jim Bodine, County Assessor of Oklahoma County.

Keaton, Wells & Johnston, Roy C. Lytle, and Clarence Black, all of Oklahoma City, for intervener International Harvester Company.

W. L. Funk, County Atty., of Canadian County, Mac Q. Williamson, Atty. Gen., and Randell S. Cobb, First Asst. Atty. Gen., for defendant in error.

OSBORN, J. Plaintiff in error, plaintiff below, challenges the constitutionality, on several grounds, of subsection (e) of section 6, art. 4, ch. 66, Session Laws 1939, as amended by House Bill No. 456, Session Laws 1941, relating to the taxation of intangible personal property. Plaintiff is a foreign corporation organized under the laws of the State of New York and authorized to do business in this state. It maintains two branch offices within the state, one at Oklahoma City and one at Tulsa. At and from these branches plaintiff conducts, performs, and directs its business and business operations in this state. Its business is that of purchasing and discounting from automobile dealers throughout the state conditional sales

contracts arising out of the time or installment sales of automobiles, refrigerators, and radio equipment, and of collecting the amounts due under such conditional sales contracts as the installments thereon become due and payable. The total volume of business thus transacted by plaintiff within the state amounts to from ten to fifteen million dollars per year, and about 65 per cent of said volume is handled through the Oklahoma City branch office and about 35 per cent thereof through the Tulsa office. Generally speaking, the Oklahoma City office purchases and handles conditional sales contracts from dealers in the western portion of the state and the Tulsa office handles and purchases said contracts in the eastern portion of the state. Plaintiff has no place of business in Canadian county, does not retain possession within Canadian county of said contracts, but all of such contracts purchased from dealers having places of business in Canadian county are kept at the Oklahoma City branch office. The conditional sales contracts involved herein are those which have been purchased by plaintiff from automobile dealers residing in and having their places of business in Canadian county and (quoting from the brief of plaintiff in error) "which would have been taxable in said Canadian county had said automobile dealers retained title thereto."

Plaintiff instituted this action to enjoin the defendant in error (defendant below) Sam Hulbert, as county assessor of Canadian county, from proceeding to list and assess to plaintiff as of January 1, 1942, conditional sales contracts owned by plaintiff and held at its Oklahoma City branch office of the value of some $65,000 or $70,000, which contracts plaintiff concedes were purchased from automobile dealers residing and having their places of business in Canadian county. Plaintiff purchases similar contracts from automobile dealers in practically all of the 77 counties of the state.

International Harvester Company, which transacts a similar business, filed an intervening petition, by permission of the court below, and joins plaintiff in this attack. Jim Bodine, as county assessor of Oklahoma county, filed an intervening petition in the court below asserting the taxability of said conditional sales contracts held by the Oklahoma City branch office within Oklahoma county.

The trial court held that House Bill No. 456 was constitutional and denied the petition of plaintiff and interveners for an injunction and enjoined, upon application of defendant, the county assessor of Oklahoma county from assessing to the plaintiff in Oklahoma county the receivables which were assessable as against it in Canadian county. Plaintiff, joined by interveners, appeal, presenting separate petitions in error, but all filed a joint brief.

For clarity, we set forth certain pertinent provisions of the Act of 1939, supra. Section 1 of the act defines "accounts and bills receivable" as intangible personal property. Section 2 provides:

"Section 2. Intangible personal property, as defined in Section 1 of this Act, is hereby classified for the purpose of taxation. For the fiscal year beginning June 1, 1940, and for each succeeding fiscal year, there is hereby levied a tax, *in lieu of the regular ad valorem taxes* on such intangible personal property at the following rates:

"(a) Two mills upon each dollar of money on hand, money on deposit, and other cash items as defined in subdivisions (a) and (b) of Section 1 of this Act.

"(b) Four mills upon each dollar of other intangible personal property as defined in subdivisions (c) to (h), inclusive, of Section 1 of this Act.

"Such intangible personal property shall be assessed at its fair cash value, estimated at the price it would bring at a fair voluntary sale as of January first of each year.

"The tax provided for in this Act, is hereby levied and collected for the following specific purposes, to wit:

"First, for the general fund of the county in which such tax is paid, one-half (½) of such amount collected.

"Second, for aid of the common schools of the county in which such tax is paid, one-half (½) of such amount collected. . . ."

Section 6 of the original act was amended by subsection (e), ch. 33, Title 68, Session Laws 1941, to read as follows:

"(e) In all cases where merchandise or other tangible personal property or service, has been sold on credit or on the installment plan by any merchant, dealer or agent, and the notes, conditional sales contracts or other choses in action arising out of such transaction are sold, assigned or otherwise transferred by such merchant, dealer or agent, such notes, conditional sales contracts or other choses in action shall, unless prohibited by federal laws, be listed and assessed in the county where they would have been taxable if such merchant, dealer or agent had retained title thereto, even though the purchaser thereof may be a nonresident of such county and not have a place of business therein."

It is conceded that the intangible personal property sought to be listed and assessed against plaintiff is located within the State of Oklahoma and is properly taxable within the state, and it is further conceded that if subsection (e) of the amendment, supra, is constitutional, said receivables are taxable in Canadian county, but it is urged that subsection (e), supra, contravenes various provisions of the State and Federal Constitutions to which we shall now direct our attention.

The plaintiff presents four propositions in its brief for reversal of the judgment of the trial court. The first two propositions are presented together in the brief, and, summarizing, plaintiff asserts that subsection (e), supra, violates the 14th Amendment to the Constitution of the United States, and section 2, art. 2, and section 5, art. 10, and section 59, art. 5, of the Constitution of this state, in that thereby plaintiff's property is taken for public use without just compensation and without due process of law and plaintiff is denied the equal protection of the laws, and that thereby the uniformity of taxes upon the same class of subjects is destroyed, and uniform operation of the intangible personal property tax law throughout the state is prevented.

The 14th Amendment to the Constitution of the United States, in part, provides: ". . . nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Section 2, art. 2, Oklahoma Constitution, provides:

"All persons have the inherent right to life, liberty, the pursuit of happiness, and the enjoyment of the gains of their own industry."

Section 5, art. 10, Oklahoma Constitution, provides:

"The power of taxation shall never be surrendered, suspended, or contracted away. Taxes shall be uniform upon the same class of subjects."

Section 59, art. 5, Oklahoma Constitution, provides:

"Laws of a general nature shall have a uniform operation throughout the state, and where a general law can be made applicable, no special law shall be enacted."

Let us keep firmly in mind that the situs of the intangible personal property sought to be taxed in this controversy is admittedly within the State of Oklahoma, and that this state has full power and authority to tax the same, and that there is no variation in the rate of taxation, whether the same be listed for taxation in one county of the state or another, since the rate of taxation is fixed by virtue of the provisions of section 2 of the Act of 1939, supra. But plaintiff contends that by reason of the presence of said securities within Oklahoma county and by reason of the fact that the branch office of said foreign corporation is located within Oklahoma county and it transacts a large percent-

age of its business throughout the state from its office in Oklahoma county, the property has acquired a taxable situs within Oklahoma county under the general rule or maxim that personal property is taxable at the domicile of the owner or under the exception that personal property may acquire a "business situs" and be properly taxable at some other situs than the domicile of the owner thereof, and that the Legislature is without power and authority to fix another and different situs for the taxation of such property.

In section 444, vol. 2, Cooley on Taxation, it is said:

"As to intangible personal property, the power of the Legislature to fix its situs is the subject of some doubt where it is attempted to fix such situs in a state other than the domicile of the owner. There are decisions broadly asserting the power to so fix the situs. Undoubtedly the Legislature may change the rule that the place of taxation is the domicile of the owner, as between different places in the same state. . . .

"There are a few decisions laying down a very broad rule as to the power of the Legislature to fix the situs of property for taxation. For instance, it is sometimes stated without qualification that the Legislature has the power to fix the situs of personal property. These statements, dicta for the most part, where in conflict with what is stated above, do not state the law correctly except perhaps as limited to the facts of the particular case. However, if the statement is limited to taxation as between different places in the same state, it is undoubtedly true. . . ."

In 61 Corpus Juris, 125, § 57, it is said:

"The Legislature may, without violating the constitutional provisions in regard to equality and uniformity of taxation, fix the situs of personal property for purposes of taxation, and give it a situs other than the domicile of the owner, it being sufficient if the property where it is taxed is taxed equally and uniformly with other property in the same taxing locality; but the action of the Legislature must not be purely arbitrary or unreasonable. . . ."

In 61 Corpus Juris, 228, § 211, it is said:

"Subject to the rule that a state cannot fix the taxable situs of intangible property where it has never come into the state and is not subject to the control of the state, the power of a state or territory, unless constitutional restrictions interfere, to give property of the nature here considered a situs of its own, apart from the domicile of the owner, for purposes of taxation, has been recognized, even where, as a result, the property of a nonresident becomes taxable. According to some cases, however, a statutory provision in definite or positive terms usually is necessary in order to give intangible property such a situs.

"Subject to constitutional restrictions, the right of a state to fix the time at which intangible property within its jurisdiction may acquire a taxable situs has been recognized."

In 61 Corpus Juris, 528, § 640, it is said:

". . . There is, however, authority for the view that intangible property of the nature here considered may acquire a situs in a taxing district or unit apart from the domicile of the owner, and the authority of the Legislature to give securities or credits such a separate situs has been recognized, as, for example, by statute rendering mortgages of land taxable where the land is situated."

Section 654, 61 Corpus Juris, 538, is, in part, as follows:

". . . It has been held or recognized, however, that intangible property may acquire a business situs apart from the domicile or home office of the corporation, and, subject to constitutional limitations, the Legislature may fix the situs of such property for purposes of taxation elsewhere than at the domicile or principal office, and valid statutory provisions in this regard are to be given effect."

In the case of Union Tanning Co. v. Commonwealth et al., 123 Va. 610, 96 S. E. 780, it was held:

"The Legislature has plenary power to provide that intangible personalty of a nonresident corporation shall be as-

572

sessable for taxation at any place it may designate, regardless of the true domicile."

In the opinion the court said:

"That is to say, the whole subject is statutory if there is a statute law governing the subject. It is only in the absence of statute on the subject that the rule with respect to the situs of intangible personal property following the domicile of its owner applies. The Legislature has plenary power to provide that such property of a nonresident corporation (and of nonresident natural persons) shall be assessable for taxation at any place or places it may designate, regardless of the true domicile of the corporation or person taxed. By such designation it makes such place or places the quasi domicile—i. e., the domicile for purposes of taxation in this state—of such corporations or natural persons. It gives to such quasi domicile the same effect quoad purposes of taxation as if it were the true domicile."

In the case Columbus Southern Railway Co. v. Wright, 151 U. S. 470, 482, 14 S. Ct. 396, 38 L. Ed. 238, the Supreme Court of the United States said:

"The whole complaint made by the plaintiff in error is that it had a constitutional right to have its rolling stock, and other unlocated personal property, taxed in the county of Muskogee, where it had its principal office, and to give such property a different situs, under the act complained of, by distributing it among the counties through which the road extended, was an unjust discrimination, and violated its constitutional rights. This proposition cannot be entertained for a moment, for the reason already stated, that it was clearly within the province of the Legislature of Georgia, to give such personal property a different situs, for purposes of taxation, from that of the company's principal office."

In the case of Liverpool & London & Globe Ins. Co. of New York v. Board of Assessors for Parish of Orleans, 221 U. S. 346, 354, 31 S. Ct. 550, 55 L. Ed. 763, the Supreme Court of the United States said:

"The asserted distinction cannot be maintained. When it is said that intangible property, such as credits on open account, have their situs at the creditor's domicil, the metaphor does not aid. Being incorporeal, they can have no actual situs. But they constitute property; as such they must be regarded as taxable, and the question is one of jurisdiction.

"The legal fiction expressed in the maxim mobilia sequuntur personam yields to the fact of actual control elsewhere. And in the case of credits, though intangible, arising as did those in the present instance, the control adequate to confer jurisdiction may be found in the sovereignty of the debtor's domicil. The debt, of course, is not property in the hands of the debtor; but it is an obligation of the debtor, and is of value to the creditor, because he may be compelled to pay; and power over the debtor at his domicil is control of the ordinary means of enforcement. Blackstone v. Miller, 188 U. S. 205, 206, 47 L. Ed. 444, 23 S. Ct. 277. Tested by the criteria afforded by the authorities we have cited, Louisiana must be deemed to have had jurisdiction to impose the tax. The credits would have had no existence save for the permission of Louisiana; they issued from the business transacted under her sanction within her borders; the sums were payable by persons domiciled within the state, and there the rights of the creditor were to be enforced. If locality, in the sense of subjection to sovereign power could be attributed to these credits, they could be localized there. If, as property, they could be deemed to be taxable at all, they could be taxed there."

In the case of De Ganay v. Lederer, 239 Fed. 568, the court held:

"Notwithstanding the legal maxim that the situs of intangible personal property is the domicile of the owner, such personal property may be given a special or particular situs for taxation, if the taxing power has jurisdiction over the rem as a practical fact."

In the body of the opinion it was said:

"The thought is that notwithstanding the legal maxim, or fiction, or fact (call it what you will), that the situs of intangible personal property is the domicile of the owner, the state may nevertheless give to property (such as corporate stocks, bonds, and the like) a special or particular situs for the purposes

of taxation, and this power is limited only by the jurisdiction of the taxing power over the rem as a practical fact. . . ." (Citing cases).

In the case of First National Bank of Mendota v. Daniel Smith, Collector, etc., 65 Ill. 44, the Supreme Court of Illinois held:

"While it is true as a general rule, at common law, that personal property has no situs of its own, but follows the person of the owner, the rule is one of convenience only, and there is no constitutional provision to prohibit the Legislature from changing the rule. Therefore, the act of 1867 which provides for taxing the shares of national banks at the place where such banks are located, without regard to the residence of the owners of such shares, is constitutional and valid."

In the case of Freedom Township in Republic County v. Douglas, County Clerk, 99 Kan. 176, 160 P. 1147, the court held:

"It is competent for the Legislature to fix the situs of property for the purpose of taxation, and it was within its power to provide that the moneys, notes, and other property in the hands of the treasurer of a mutual fire insurance company shall be listed for taxation where he resides, and that all other property of the company shall be listed where the secretary of the company resides."

In the case of Gulf Refining Co. v. Tillinghast, 152 La. 847, 94 So. 418, the Supreme Court of Louisiana said:

"It was formerly the universal rule, and is even now the rule in the absence of statutes to the contrary, that personal property has its situs at the domicile of the owner. 37 Cyc. 947; 37 Cyc. 952; 26 R. C. L. 280. And an examination of the adjudged cases will show that the contention ever was that no legislative power was competent to change that rule, even as to movable property, permanently within its jurisdiction. . . .

"This much is therefore certain that the rule 'mobilia sequuntur personam' prevails in the absence of legislative provision to the contrary; and that rule was long thought to be so sacrosanct

that it required a long line of jurisprudence to establish that it was but a mere rule of law and not a fundamental principle of government, and hence was subject to change by the Legislature the same as any other law. On the other hand, it is equally true that the rule does prevail in the absence of statutory provisions to the contrary. See Board of Supervisors v. Newport News, 106 Va. 764, 56 S. E. 801, and the note thereon in 10 Ann. Cas. 354, 355."

In the case of Illinois Cent. R. Co. v. Carr, County Collector, 302 Ill. 172, 134 N. E. 138, the Supreme Court of Illinois held:

"The rule of the common law that incorporeal personal property has no locality, but follows the person of the owner, is adopted for convenience only and may be changed by the Legislature. . . .

"The Revenue Act, changing the common-law rule that the situs of intangible property is at the domicile of the owner, provides that the assessment of a railroad's intangible property made by the State Tax Commission shall be apportioned to the several municipalities in proportion to the length of the main track within such municipality, and neither the board of assessors nor board of review has authority to assess such property, whether it was part of the charter lines or came within the revenue act."

See, also, Guarantee Life Ins. Co. v. City of Austin (Tex. Civ. App.) 165 S. W. 53; Great Southern Life Ins. Co. v. City of Austin, 112 Tex. 1, 243 S. W. 778; Ames, County Assessor, v. People ex rel. Temple, 26 Colo. 83, 56 P. 656; Commonwealth ex rel. v. Northwestern Mutual Life Ins. Co., 32 Ky. L. 796, 107 S. W. 233.

Plaintiff contends that under the fundamental common law theory of taxation, taxes are imposed for the support of the government in return for the advantages and protection which the government affords the taxpayer and his property, and where there is no such benefit there is no power to tax, and that since its property is not presently located within Canadian county, said subsection (e) authorizing its taxation

in a county where it will receive no advantage and protection, its property is taken without due process of law. It relies upon the cases of Grieves v. State ex rel., 168 Okla. 642, 35 P. 2d 454; Wilkin v. Oklahoma County Bd. of Com'rs, 77 Okla. 88, 186 P. 474; Carroll, Brough & Robinson v. State, 174 Okla. 57, 49 P. 2d 708; Standard Paving Co. v. County Bd. of Equalization of Beckham County, 135 Okla. 15, 273 P. 205, and other authorities from other states. Plaintiff overlooks the fact, however, that the tax levied by section 2 is legally levied by the state itself by virtue of said statute and that the taxing district is the state, and not the county or municipality, but the state has utilized the public officers and the public governmental machinery of the various counties, not to levy the tax, but to determine the particular property and the value thereof to which said tax shall apply, and, when applied, to collect and to make distribution of the tax as provided in the act. We think this contention is without merit.

In view of the above authorities and many others which might be cited, we are of the view that the Legislature had power to fix the situs for the making of returns for intangible personal property tax purposes as between the various counties of the state so long as its action was not arbitrary or unreasonable. The tax is levied by the fiat of section 2 of the act, is identical as to all classes of intangible property in whatever county the same may be paid, and is therefore uniform upon the same class of subjects, operates uniformly throughout the state, and since the act comes within a proper field of legislation, it does not deprive plaintiff of due process or the equal protection of the laws. We therefore conclude that said act does not violate any of the above-mentioned provisions of the Federal or State Constitutions.

But it is urged that subsection (e) of the act is violative of section 5, art. 10, of the Oklahoma Constitution in that it is an arbitrary and unreasonable classification of intangible personal property insofar as it fixes its situs for tax purposes. We think this contention is without merit.

By section 22, art. 10, Oklahoma Constitution, it is provided:

"Nothing in this Constitution shall be held, or construed, to prevent the classification of property for purposes of taxation; and the valuation of different classes by different means or methods."

In 16 C. J. S. 1048, § 520, it is said:

". . . Since taxation is so largely a question of policy, the Legislature possesses the largest measure of discretion in these matters; and the courts will not declare a tax statute void as a violation of the equal protection guaranty so long as the classification or selection made by it is based on a reason, even though in their opinion the reason is a poor one and the statute itself is unjust, the test being good faith, not wisdom."

See, also, our discussions in the cases of In re Gross Production Tax of Wolverine Oil Co., 53 Okla. 24, 154 P. 362; In re Assessment of Sales Tax against Knapp, 185 Okla. 584, 95 P. 2d 92; Love v. Silverthorn, 187 Okla. 114, 101 P. 2d 254; Magnolia Petroleum Co. v. Oklahoma Tax Commission, 188 Okla. 85, 106 P. 2d 829; Smiley v. Smith, 148 Okla. 195, 298 P. 263; In re Diehr, 174 Okla. 300, 50 P. 2d 725; State v. Stephenson-Browne Lmbr. Co., 180 Okla. 619, 71 P. 2d 991.

In this connection we might say that we perceive a sound reason for the enactment of this statute. The Legislature contemplated that dealers with fixed permanent places of business would sell large quantities of merchandise on deferred payments, for the most part secured by chattel mortgages or conditional sales contracts upon the specific property sold, which, generally speaking, would be located in the immediate neighborhood of the place of sale, and that said contracts would be filed for record in the local public records and in case of default would be enforced through local instrumentalities, thereby casting a great public burden upon the local government and local public officers. Instead of permitting one or two communities in the state to reap the

benefit of taxation by reason of the mere presence of the receivables thus arising rather than the counties of their origin, and their place of enforcement, the Legislature sought to distribute the benefits derived from taxation to the situs of the burdens of enforcement. We can see nothing unreasonable or arbitrary in this legislative design.

In its fourth proposition plaintiff contends that said subsection (e), as amended, violates section 20, art. 10, of the Oklahoma Constitution in that its application necessarily results in the imposition of taxes for purposes of counties upon property not within such counties and not otherwise therein taxable. Said section of the Constitution provides:

"The Legislature shall not impose taxes for the purpose of any county, city, town, or other municipal corporation, but may, by general laws, confer on the proper authorities thereof, respectively, the power to assess and collect such taxes."

Plaintiff cites no authority in support of this contention. It is well to note that subsection (e) does not purport to levy the tax, but said tax is levied by virtue of section 2 of said act, the validity of which plaintiff concedes. In fact, the constitutionality of the similar Money and Credits Tax Act has been sustained in a number of cases (chapter 72, Sess. Laws 1927, §§ 12339-12344, O. S. 1931); Smiley v. Smith, supra; In re Diehr, supra; State v. Stephenson - Browne Lmbr. Co., supra. It does not appear, however, that the particular question was passed upon in those cases, although, by a reading of section 12342, O. S. 1931, it will be observed that its manner of distribution of said tax is identical with the manner of distribution of the tax under consideration herein, as provided in section 2, that is, one-half to the general fund of the county and one-half for aid of the common schools of the county. It is to be noted also that the tax levied herein is "in lieu of the regular ad valorem taxes"; in other words, it is a "specific tax" as authorized by section 12, art. 10, of the Constitution. While it is a property tax, it is not an ad valorem tax as that term is used in section 9, art. 10, of the Constitution, as amended in 1933. In this connection, see our discussion of the distinction as contained in Magnolia Petroleum Co. v. Oklahoma Tax Commission, 188 Okla. 85, 106 P. 2d 829.

It is similar to the mortgage registration tax, the constitutionality of which we upheld in Trustees', Executors' & Securities' Ins. Corp. v. Hooton, 53 Okla. 530, 157 P. 293, wherein syllabus 1 is as follows:

"The act of July 12, 1913 (chapter 246, Sess. Laws 1913, p. 684), as amended March 11, 1915 (chapter 105, Sess. Laws 1915, p. 167), levies a registration tax upon the privilege of recording the instruments therein specified, and is constitutional and valid.

"(a) Said act does not contravene section 8, art. 10, Williams' Annotated Constitution, requiring that all property which may be taxed ad valorem shall be assessed for taxation at its fair cash value.

"(b) Nor does said act violate section 5, art. 10, Williams' Annotated Constitution, which requires that taxes shall be uniform upon the same class of subjects.

"(c) Section 20, art. 10, Williams' Annotated Constitution, providing that the Legislature shall not impose taxes for the purposes of any county, city, town, or other municipal corporation, etc., does not apply to the tax imposed by this act."

In Thurston, County Treas., v. Caldwell, 40 Okla. 206, 137 P. 683, we said:

"Section 20, art. 10, Williams' Annotated Constitution, Okla., which provides, 'The Legislature shall not impose taxes for the purpose of any county, city, town, or other municipal corporation, but may, by general laws, confer on the proper authorities thereof, respectively, the power to assess and collect such taxes', applies to purely municipal affairs, and does not constitute a limitation upon the power of the Legislature of the state to impose taxes for purposes which, although of a municipal character, the state has a sovereign interest in, such as taxation for police protection, for streets, highways and

bridges, for the purpose of establishing and maintaining a public school system, etc."

See, also, City of Ardmore v. Excise Bd. of Carter County, 155 Okla. 126, 8 P. 2d 2; Rogers v. Bass-Harbour & Co., 64 Okla. 321, 168 P. 212; Ryan v. Roach Drug Co., 113 Okla. 130, 239 P. 912.

We therefore conclude that said act does not contravene the provisions of section 20, art. 10, of the Constitution.

Plaintiff urges that the act is vague and uncertain of meaning as to the counties where returns shall be made of the intangibles of plaintiff for taxation purposes. Since this is an attack upon the validity of the act itself on constitutional grounds, we deem it improper to enter into a discussion of the construction of the act further than to say that it is not so vague and indefinite as to be invalid for that reason.

The judgment of the trial court is affirmed.

WELCH, C. J., CORN V. C. J., and RILEY, DAVISON, and ARNOLD, JJ., concur. HURST, J., concurs in conclusion. BAYLESS, J., absent. GIBSON, J., dissents.

---

GIBSON, J. (dissenting). The first paragraph of the majority opinion concludes with the following statement:

"The conditional sales contracts involved herein are those which have been purchased by plaintiff from automobile dealers residing in and having their places of business in Canadian county and (quoting from the brief of plaintiff in error) 'which would have been taxable in said Canadian county had said automobile dealers retained title thereto.' "

This statement in the opinion would leave the impression that plaintiff concedes that subsection (e) fixes the taxable situs of the conditional sales contracts in the county where the particular dealer resided at the time of the execution of the contracts. But this is precisely what the plaintiff denies, and it so appears from plaintiff's pleadings and its arguments contained in its briefs and made orally. Such an admission on its part could materially weaken if not wholly destroy its principal argument in this case.

Plaintiff contends that the subsection fixes the situs, not in the county where the dealer resided at the time the contract was executed, but in the county where such dealer may happen to reside or conduct a place of business on the next tax assessment day. Note the statement in the statute: "conditional sales contracts or other choses in action shall . . . be listed and assessed in the county where they would have been taxable if such merchant, dealer or agent had retained title thereto, even though the purchaser thereof may be a nonresident of such county and not have a place of business therein."

Plaintiff was a purchaser of such contracts from dealers in Canadian county. And plaintiff neither resided nor maintained a place of business there.

The taxpayers do not deny the state's power to tax the property in question. They assert, however, that subdivision (e), above, purports to delegate that power to counties where the owner of the property neither resides nor maintains a place of business, and in which the property is neither located nor has acquired a business situs, and can furnish to the owner no particular benefit in return for the taxes to be paid, all of which leaves the favored counties without those jurisdictional elements necessary to the power of taxation, and which would establish a taxable situs wholly fictitious and arbitrary and not within the scope of constitutional authority.

In my opinion the general application of subsection (e) in the manner therein provided would transgress the 14th Amendment of the Federal Constitution, as contended by plaintiff, in that it would deprive the taxpayer of his property without due process of law.

The first and fundamental element necessary to legal taxation is that of

jurisdiction in the taxing authority. Without such jurisdiction, the levying of a tax would deprive the owner of the subject of such taxation of his property without due process of law. 61 C. J. 157, § 97. And due process requires regularity in the processes for the assessment and collection of taxes. United States v. Billings, 190 Fed. 359. In Liverpool, etc., Ins. Co. v. Board of Assessors, etc., 221 U. S. 346, 354, 31 S. Ct. 550, where the question of fixing the taxable situs of intangibles was considered with relation to due process, the court, speaking of such property, said:

"Being incorporeal, they can have no actual situs. But they constitute property; as such they must be regarded as taxable, and the question is one of jurisdiction."

In Great Southern Life Ins. Co. v. City of Austin, 112 Tex. 1, 243 S. W. 778, the Supreme Court held as follows:

"The primary and fundamental rule is that no sovereignty or taxing district can exercise the power of taxation, except as to property actually or constructively within its jurisdiction, and this rule applies to counties and municipalities, as well as states."

Among the authorities cited as supporting that holding was 27 American & English Encyclopedia of Law, p. 648, wherein it is said:

"The taxing power of the state is limited to property within the state, and all such property may generally be taxed. The same is generally true of subdivisions of the state, such as municipalities, counties, school districts, etc."

In 61 C. J. 157, section 96, it is said:

"There is no doubt, however, that the constitutional requirement of due process of law applies to tax proceedings, and that the taxing power, although not limited, must be exercised so as not to deprive any person of property without due process of law. The guaranty is only that the essentials of taxation shall be observed in the taking of property, all other matters depending on the law-making power of the state, and being subject to be varied or changed as the legislative will of the state shall see fit to ordain."

And in the same text, section 97, supra, appears the statement as follows:

"The exaction of a tax which the state is without power to impose is a taking of property without due process of law."

Among the cases cited in support of the statement is Frick v. Commonwealth of Pennsylvania, 268 U. S. 473, 45 S. Ct. 603, 69 L. Ed. 1058. The statement last quoted would include taxes exacted by a county pursuant to a statute which disregards the jurisdictional elements necessary to the power to tax.

In the Frick Case, supra, the court held as follows:

"A state must have jurisdiction over thing that is taxed, regardless of whether it is the transfer of the property on owner's death or the property itself, and to impose tax without jurisdiction is mere extortion and in contravention of due process of law."

And so must every taxing subdivision of government have such jurisdiction. The county derives its power to tax from general laws enacted by the Legislature pursuant to section 20, art. 10, of the Constitution, which provides that the Legislature shall not impose taxes for the purpose of any county, but may by general laws confer on the proper authorities thereof the power to assess and collect such taxes.

Though the state may have inherent power to tax the property here involved, if it is to legally delegate that power to a county, it must confine the county to property over which the latter has jurisdiction. A statute which wholly disregards the jurisdictional requirement and would authorize a tax regardless thereof is repugnant to due process. Subdivision (e), supra, is a statute of that character.

But the majority opinion merely brushes aside the plaintiff's contentions in this regard. It is there said that the state and not the county is the taxing district; that the state levies the tax and merely utilizes the officers of the

county, not to levy the tax, but to determine the particular property and the value thereof to which the tax shall apply, and to collect the same, and make distribution as directed by the statute.

It is true that section 2 of the act says "there is hereby levied a tax, in lieu of the regular ad valorem taxes, on such intangible personal property at the following rates:" The rates are then designated.

Though the statute purports to levy the tax, it does not purport to impose taxes. If it did, it would be violative of section 20, art. 10, of the Constitution, above, for the tax is to be used for the purposes of the county. A portion thereof is to be applied to the county general fund. The plain purpose was to fix the rate of taxation and authorize the county to impose or assess and collect the taxes for its own purposes and make distribution thereof. Note again subsection (e) where it says that this particular kind of property shall be "listed and assessed" in the county. This is not an excise tax levied by the state, but a property tax to be listed and assessed in the county "in lieu of the regular ad valorem taxes." There is not the slightest intimation that the state intended to remove this class of property from the tax rolls of the county and place taxation powers in the state alone. Prior to this act counties of the proper situs already had power to tax these intangibles. The state has merely fixed a rate to apply in lieu of the county's regular ad valorem rate. This is not a state levy for state purposes. My opinion is that the majority opinion in this respect ignores said section 20, art. 10.

I am unable to agree with the majority statement that the plaintiff, in its argument that subsection (e) denies due process, relies entirely on the ground that the Legislature may not fix the taxable situs of this property other than at the domicile of the owner or at the place where the property may have acquired a business situs. Plaintiff's argument in this respect is based upon the fact that the statute would permit a county to tax the property without regard to any benefit to be received by the taxpayer in return for the tax, which is the first and fundamental element necessary to the jurisdiction to tax.

The power to tax is founded upon the principle that the sovereign is entitled to compensation for the protection it affords the subject of the tax. 61 C. J. 67, § 2. This theory falls when the subject of taxation can receive no benefit from the government exacting the tax.

In the text last cited it is said:

"The theory of taxation is that taxes are imposed for the support of the government in return for the general advantages and protection which the government affords the taxpayer and his property, and that where there is no such benefit, there is no power to tax."

In support of this statement are cited decisions by the courts of various states and of the Supreme Court of the United States.

The latter statement finds support in every decision known to us which involves the particular question. In Ewert v. Taylor, 38 S. D. 124, 160 N. W. 797, the court quoted Cooley on Taxation, as follows:

"The burden of a tax must be made to rest upon the state at large or upon any particular district of the state according to whether the purpose for which it is levied is of general concern to the whole state, or, on the other hand, pertains only to the particular district."

Then the court said:

"To be the beneficiary of the purpose of the taxation, the property, either through itself or its owner, must have a situs within the district wherein the purpose is to be effectuated."

As said above, the situs may be actual or constructive. It must be one or the other if the property is to be benefited by the tax. If it can receive no benefit from the tax, it has no legal situs in the taxing district, and an exaction of a tax under such circumstances would deprive the owner of his property without due process of law. The question is

one largely of territorial jurisdiction. If the property is neither actually nor constructively within the territorial limits of the taxing power, there is no jurisdiction to tax; and the Legislature cannot create a wholly fictitious and arbitrary situs. Ewert v. Taylor, supra.

In Great Southern Life Ins. Co. v. City of Austin, supra, the court said:

"We have heretofore adverted to the fundamental principle that the power of taxation could only be exercised where the property was actually or constructively situated—that is, within the jurisdiction of the taxing power. The authorities cited are all based upon this conception of the primary basis of the taxing power."

This statement appears to be correct.

And in Atlantic Coast Line R. Co. v. Amos, 94 Fla. 588, 115 So. 315, it was said:

"It is essential to the power of taxation that either the owner of personal property be a resident or the property be situated within the district attempting to exercise the power to tax."

All of which means that where there is no benefit accruing to the taxpayer, there is no power to tax. The law here under consideration wholly disregards this fundamental and very essential element of jurisdiction.

The situs of intangible property is usually at the domicile of the owner, but it might become so situated as to receive protection from a government other than that of the owner's domicile and thus become taxable thereby. Grieves v. State ex rel. County Attorney, 168 Okla. 642, 35 P. 2d 454. In that case the court held as follows:

"In the absence of controlling circumstances to the contrary, the general rule is that the situs of intangible property for the purposes of taxation is at the owner's domicile. . . .

"In order to constitute a business situs where intangible property is taxable other than the owner's domicile, it must be shown that possession and control of the property has been localized in some independent business or investment away from the owner's domicile so that its substantial use and value primarily attach to and become an asset of the outside business."

It is generally held, as the above case recognizes, that intangible property may acquire a business situs and become subject to taxation in a jurisdiction other than the domicile of the owner. But the court also said in that case that the mere presence of intangible property such as stocks, bonds, bills receivable, etc., for safekeeping in a county other than the owner's domicile was not sufficient to fix a taxable situs therefor away from such domicile.

I do not say that the Legislature by law may not fix the taxable situs of such property, without regard to domicile, in the county where the contracts or debentures evidencing the obligations have become permanently located. But such was not the situation in this case.

But subdivision (e), supra, would confer the power on counties to tax this character of property without regard to any of the recognized jurisdictional requirements as above set out. Jurisdiction is made wholly and exclusively dependent on the whereabouts on the next assessment day of the merchant, dealer, or agent who assigned the contract. This is made clear by the express language of the act wherein it is provided that the intangibles shall be "listed and assessed in the county where they would have been taxable if such merchant, dealer or agent had retained title thereto, even though the purchaser thereof may be a nonresident of such county and not have a place of business therein."

Thus it is seen that the place of assessment is made dependent on the residence of the assignor of the contract. It is not dependent on the residence of the purchaser, the location of the property, or the business situs thereof. A county is allowed to profit from the assessment without regard to whether it may render protection to the property or to its owner, in disregard of the very fundamental principle upon which is based the power or jurisdiction to tax.

It is of no consequence that the assessment in some instances may fall within the county which would ordinarily have proper jurisdiction to levy the tax. The constitutionality of an act must be tested, not by what has been done under it, but by what it authorizes to be done under its provisions. 12 C. J. 786, § 219.

Here, the statute authorizes the levy and collection of a tax by counties without regard to jurisdictional requirements. Its enforcement would result in taking the property of the taxpayer without due process of law.

In all the cases examined by me I have found none that would approve a statute authorizing the levy and collection of a property tax in a jurisdiction that can furnish no protection or benefit to the taxpayer in return for the tax so collected.

The majority opinion cites and quotes many decisions and texts, but those authorities merely recognize the principle that the Legislature may exert broad powers in fixing the situs in such cases. But those powers have never been considered as unlimited. As Cooley says in the text cited:

"The Legislature may change the rule that the place of taxation is the domicile of the owner, as between different places of taxation within the state."

But the author does not say that a situs may be fixed without regard to the location of the rem, the owner, or the place of business, or the debtor.

The majority opinion quotes certain authority to the effect that the Legislature has plenary power to provide for the assessment and taxation of the intangibles of a nonresident corporation at any place it may designate, regardless of the true domicile. But this has no bearing on this case. Domicile is not controlling, and the statute does not purport to apply to none but nonresident corporations. That question is not involved.

The opinion also contains a number of quotations from 61 Corpus Juris.

Those statements merely recognize the power of a Legislature to fix a situs other than the domicile of the taxpayer, such as business situs of the intangibles or the fixed situs of the tangible property given as security for the payment of the intangibles such as real estate mortgages.

And there is the case of DeGanay v. Lederer, 239 Fed. 568. There it was said that intangibles may be given a special or peculiar situs for taxation. But note the proviso: "if the taxing power has jurisdiction over the rem as a practical fact." I fail to see why this does not fully support plaintiff's present contention. Here the county is the taxing power by virtue of the power delegated by the Legislature. In the face of section 20, art. 10, supra, it must be so.

In my opinion, not one of the authorities cited in the majority opinion supports the conclusion there reached on this particular question, due process. Those authorities merely recognize the power of the Legislature to fix a situs other than the domicile of the owner. But none seems to lose sight of the requirement that the taxing power must have jurisdiction of the rem as a practical fact. Not one says that such jurisdiction may exist without regard to the domicile of the owner and the business situs of the property and the location of the property itself and the domicile of the obligor.

Since the majority opinion sustains subsection (e) as being in conformity with due process, and as a proper classification of property for the purposes of taxation, and as uniform taxation on the same subjects, and as not being arbitrary and unjust, and as not constituing a delegation of power by the Legislature to the county to impose taxes for use of the county, we had as well say that from now on the Legislature shall be the sole judge of whether its enactments relating to the assessment and collection of taxes are in conformity with the various constitutional provisions that heretofore have seemed to limit its powers in this respect. For, in view of the opinion, there would

seem to remain no tangible theory or feasible argument upon which to lay hold in an effort to forestall the enforcement of that character of legislation.

For the foregoing reasons, I respectfully dissent.